## Lessee of HAMILTON *against* MARSDEN.

### IN ERROR.

*Sunbury,*
*Monday,*
June 7.

THIS was a writ of error to the Common Pleas of *Mifflin* county, with which were returned two bills of exceptions to the opinion of the Court below, in admitting evidence.

*First bill.* The suit was an ejectment for a tract of land, which the plaintiff claimed derivatively under a location of the 13th *May* 1769; and having proved a lease of the premises by himself to a certain *John Magee*, on the 6th *June* 1785, for five years, from the 1st of *April* 1785, and that the defendant claimed under *Magee*, he rested his case. The defendant then, in order to enable him to prove title adverse to the plaintiff, offered a witness to prove, that *Magee* had taken a lease of the premises from a certain *James Brown*, and being in possession by virtue of the lease, the plaintiff came to the land with two men armed with guns, and threatened to turn *Magee* off, unless he would take a lease from *Hamilton;* and in consequence he did take the lease. The Court admitted the evidence, and the plaintiff's counsel tendered the first bill.

*Second bill.* The defendant having proved the circumstances attending *Hamilton's* lease, then produced the lease from *Brown* to *Magee*, to which there were two subscribing witnesses, *John Marsden*, the present defendant, and *Yost Marsden*, both disinterested at the time of the attestation, and had since become interested by their own act: and having first proved by a witness, that there was an agreement in writing between *Brown* and *Magee*, he offered to prove the

Although a lessee cannot controvert the title of his lessor, yet this rule exists only where the lease has been taken without fraud, force, or illegal behaviour on the part of the lessor, and not where the lessor has threatened the lessee to turn him off the land by force of arms, unless he would take the lease. The handwriting of a subscribing witness to a lease, disinterested at the time of his attesting, may be proved if he becomes interested subsequently, though by his own voluntary act. A lease, or bond, may be read in evidence upon proof of the handwriting of a subscribing witness who has become interested, or is in foreign parts, without proof of the handwriting of the lessor or obligor: but the evidence is not conclusive, and under suspicious circumstances, further proof is necessary.

handwriting of these subscribing witnesses, as a ground for reading the lease to the jury. The Court admitted the evidence, the lease was read, and the plaintiff tendered the second bill.

*Huston* and *Watts* for the plaintiff in error. 1. *Hamilton* leased to *Magee,* who assigned to *Read,* who assigned to the defendant, one year before the lease expired: therefore the defendant came in under the plaintiff, and cannot controvert his title. If *Brown's* title was to be set up, he should have been made defendant on the record. 2. There are two objections under the second bill. First, that the subscribing witnesses had become interested by their voluntary act, and the rule applies to accidental or involuntary interest. *Glynn* v. *Bank* of *England* (*a*), *Tilley's case* (*b*), *Goss* v. *Tracy* (*c*). Secondly, that where from interest or death the handwriting of the witness is offered to be proved, it should be attended with proof of the party's handwriting; *Bull. N. P.* 255. *Peake's Ev.* 66. otherwise frauds innumerable might be committed.

*Burnside* and *Duncan* for defendant in error. 1. The rule that a person coming into possession under a landlord, or accepting a lease from him, shall not be permitted to controvert his title, is founded in policy to preserve good faith and to prevent fraud. There was no *mala fides* in the defendant's giving the evidence proposed, because it shewed violence and outrage on the part of the plaintiff, in imposing the lease upon *Magee.* The plaintiff would otherwise have reaped a benefit from his own wrong. 2. The paper was sufficiently proved to go to the jury. In addition to the proof of handwriting, there was corroborating evidence of an agreement; though in the first instance, proof of the handwriting was sufficient. As to voluntary or accidental interest, there is no such distinction. *Davison* v. *Blumer* (*d*), *Godfrey* v. *Norris* (*e*), *Lesher* v. *Levan* (*f*), 3 *Com. Dig.* 280. *Evid. B.* 3. *Jones* v. *Mason* (*g*), *Henry* v. *Philips* (*h*),

| | | |
|---|---|---|
| (*a*) 2 *Ves.* 42. | (*d*) 1 *Dall.* 123. | (*g*) 2 *Stra.* 833. |
| (*b*) 2 *Ld. Ray.* 1008. | (*e*) 1 *Stra.* 33. | (*h*) 2 *Atk.* 48. |
| (*c*) 1 *P. Wms.* 288. | (*f*) 2 *Dall.* 96. | |

*Fox* v. *Reel* (*i*), *Sluby* v. *Champlin* (*k*), *Clark* v. *Sanderson* (*l*), *January* v. *Goodman* (*m*).

The case was argued at June Term last, and held under advisement to this day.

TILGHMAN C. J. The plaintiff proved that the defendant claimed under *John Magee*, and that *Magee* had taken a lease from him, (the plaintiff) and therefore contended, that neither the said *Magee*, nor the defendant who claimed under him, should be admitted to controvert the plaintiff's title. On the other hand, the defendant offered to prove that *Magee* had taken a lease from *James Brown*, and entered into possession by virtue of it, after which the plaintiff came to the land with two other men with guns, and threatened to turn *Magee* off, unless he took a lease, in consequence of which he did take a lease from the plaintiff. The court admitted this evidence; and it appears to me that they were right in so doing. That a tenant should not be permitted to contest the title of his landlord, is a liberal principle for the encouragement of justice and good faith, but it was certainly a departure from the strict rule of law, and therefore must not be used as an instrument of fraud or violence. If the plaintiff were permitted to avail himself of it in the present instance, it would be suffering him to defeat *Brown's* title merely by his own outrageous conduct. This case, therefore, forms an exception to the general rule, which is founded on the presumption of the lease being taken without fraud, force or illegal behaviour on the part of the lessor.

The defendant having proved the circumstance, under which the lease was taken by *Magee* from the plaintiff, went on to offer evidence of the lease from *Brown* to *Magee*. He produced that lease to which there were two subscribing witnesses, *Yost Marsden*, and the defendant *John Marsden*, both disinterested at the time when the lease was made, though interested at the time of trial. Having proved by the oath of *Elizabeth Foster*, that there was an agree-

(*i*) 3 *John*. 477.  (*k*) 4 *John*. 461.  (*l*) 3 *Binn*. 192.  (*m*) 1 *Dall*. 208. *Vide* as to handwriting of witnesses, 1 *Bos. & Pull*. 360, 7 *D. & E*. 265. *Doug*. 9. 5 *D. & E*. 371. 2 *East*. 250. 183. 1 *Peake*, 99.

1813.

Lessee of
HAMILTON
*v.*
MARSDEN.

ment in writing between *Brown* and the said *Magee*, the defendant offered evidence of the handwriting of the subscribing witnesses, which was admitted by the Court. The general rule is conceded, that where a subscribing witness becomes interested after the time of subscribing, his handwriting may be proved. But the plaintiff's counsel insist, that this rule is not applicable to cases where the witness becomes interested *by his own voluntary act*. I find no warrant for this distinction. The authorities are to the contrary. In *Godfrey* v. *Norris*, 1 *Str.* 34, the plaintiff was administrator *de bonis non* of the obligee. It was his own act to become administrator, yet being the only subscribing witness to the bond, his handwriting was suffered to be proved. There are other cases where similar evidence was admitted. The proof of the handwriting of the subscribing witnesses in the present instance, was corroborated by the previous testimony of *Elizabeth Foster*, who proved that *Magee* was in possession under *Brown* before he took the lease from the plaintiff, and who also proved that there was an agreement in writing between *Brown* and *Magee*. The evidence would have been more complete, if the handwriting of the lessor had been proved. But I think there was enough to suffer it to go to the jury. The Supreme Court of *New-York* decided in *Sluby* v. *Champlin*, 4 *Johns.* 461, that a bond might be read in evidence, on proof of the handwriting of the subscribing witness, who was absent in foreign parts, without proof of the handwriting of the obligor. This Court have never decided to the contrary; and there seems to be good reason for adopting the same rule. The evidence is not conclusive; under suspicious circumstances the jury might not be satisfied without further proof. I am of opinion on the whole, that the Court below were right in both points, and therefore the judgment should be affirmed.

YEATES J. The question of fact in this case was, whether the defendant came into possession of the tract of land in dispute under the lease said to have been made by *James Brown* to *John Magee*, dated 1st *May* 1783, or under the lease made by the lessor of the plaintiff to *Magee*, dated 6th *June* 1785. It is agreed on all hands, that tenants and other persons claiming or coming into possesssion under

them, shall not be permitted to set up an adverse title in a third person against their landlord, whose title such lessees had acknowledged, and held under. They should surrender up the possession according to their original contract, when the lease was expired; and if they should think proper to buy in any other right, they should institute an ejectment for the recovery of the premises under such right. 2 *Binney*, 471, 2, 3.

Upon the first bill of exceptions, I can see no difficulty. The defendant might well shew, that *Magee* entered into possession under *Brown*, and accepted a lease from him; that he was afterwards threatened to be forcibly dispossessed, unless he agreed to become the tenant of *Hamilton*, and that he took a lease from *Hamilton*, in consequence of such threats; that he assigned his possession to *John Read*, and that the defendant having purchased the right of *Brown*, the original landlord, came in under his lessee. It was not competent to *Hamilton* to found his pretensions to a recovery, upon a supposed breach of faith in *Magee*, his tenant, when that tenancy was superinduced by immoral conduct on his part, and using improper means to compel *Magee* to violate his previous engagements entered into with *Brown*. The plaintiff made a case wherein the *jus possessionis* formed the chief subject of inquiry; and it became the province of the jury, not of the Court, to decide, on a careful review of the evidence, in whom the rights of landlord fairly attached.

The second bill of exceptions requires a more particular examination. The primary rule of evidence is, that the best evidence which the nature of the fact is capable of, shall always be required; which is understood to mean, that no such evidence shall be admitted, which supposes better evidence in the power of the party to produce. If a deed or other instrument in writing is offered in evidence, it must be proved by the oaths or affirmations of the subscribing witnesses; but if such witnesses cannot be had at the trial, a secondary mode of proof is allowed, from the necessity of the case. Thus if the subscribing witness is dead, his hand-writing may be proved. 12 *Viner*, 224. *pl.* 10, *Comb.* 248; 2 *Atk.* 48; 1 *Johns. Ca.* 230. So if the witness become blind, 1 *Ld. Ray.* 734. So if he be beyond sea, or the process of

Lessee of
HAMILTON
*v.*
MARSDEN.

the Court, 12 *Mod.* 521. 604; 12 *Vin.* 224, *pl.* 12, 13. Or if he becomes infamous, 2 *Stra.* 833, or interested, 12 *Vin.* 5. *pl.* 6, 1 *Eq. Ca. Ab.* 224, 2 *Ves.* 42, 2 *Vern.* 700. This is the mode of proof known to the law from immemorial usage, though I still adhere to the opinion which I expressed in *Clark* v. *Sanderson*, 3 *Binney*, 196, that the handwriting of the party to the instrument would be stronger proof of its execution, than the signature of any witness proved by other witnesses. But we must take the law as we find it, and it would be attended with much uncertainty and inconvenience, if the rules of evidence could be changed according to our abstract ideas of the reasonableness of them, from time to time.

If indeed the disability of the subscribing witnesses had attached prior to the attestation of the instrument, I should hold that the ground of incompetency which interdicted them from giving testimony, equally applied to the admission of evidence respecting their handwriting. Thus a wife witnessing a paper whereby her husband obtained a beneficial interest, or a co-partner subscribing one, whereby the firm of the house derived an advantage, proof of their handwriting could not be received. So also where a witness, prior to his attestation, had been convicted of a *crimen falsi*. But this objection does not arise on the second bill of exceptions, which barely states that *John Marsden* was the defendant in the suit, and that *Yost Marsden* was admitted to be interested.

The question then before us is reduced to a single point, whether on proof of their handwriting as the subscribing witnesses, who had afterwards become interested, the lease from *Brown* to *Magee* ought not to have been read to the jury?

A distinction has been taken in a late *English* case, between the proper proof where a subscribing witness is *dead*, and where he resides in a foreign country, or by the commission of some crime or the accruing of some interest subsequent to the execution of the instrument, has become an incompetent witness; that in the first case where he is *dead*, it is sufficient to prove his handwriting alone, but in the other cases it is usual, and seems to be necessary, to prove the handwriting of the party to the deed also. 1 *Peake's Evid.*

66. The law in *England*, on this subject, appears not to be fully settled, and I am not aware of any determinations there, previous to the *American* revolution, requiring proof of the handwriting of the party, in aid of the handwriting of the attesting witnesses who have become interested: nor do I know of any decision amongst ourselves to that effect. Indeed it has been decided in the Supreme Court of *New York* on solemn argument, that where the subscribing witness to a bond is *dead*, proof of his handwriting is sufficient without proving the hand of the obligor. *Mott* v. *Doughty*, 1 *Johns. Ca.* 230. On that occasion the Court say, that the cases in support of the rule are reasonable, that some relate to *absent* witnesses, but the principle in all is the same. The same determination was given in *Sluby* v. *Champlin*, 4 *Johns.* 467. in the cases of witnesses out of the state. Such has been the practice of our own Courts in repeated instances, and I can refer to one case in particular, at a Circuit Court in *Northampton* county, before Judge *Smith* and myself in *June* 1814, between *Joseph Taylor* and *Jacob Meckley* wherein the doctrine was fully considered. To establish a new rule now, would be a manifest surprize on suitors, who conformed themselves to the ancient system of evidence, and could only be justified on the clearest grounds of common safety and public convenience. I regard the proof of the handwriting of the attesting witnesses to this lease, who had become incompetent by an interest accruing to them subsequent to the execution of the demise, as regular, and that it justified the Court in permitting the same to go to the jury. Scarcely can a case be put wherein frauds may not be practised. Where suspicious circumstances occur, it becomes the duty of the Court to apprize the jury thereof, and put them on their guard; but I consider the lease as proved here, to be *prima facie* evidence of every thing on the face of the paper, which imports to be sealed by the party. I am therefore of opinion that the judgment of the Court of Common Pleas for *Mifflin* county be affirmed.

BRACKENRIDGE J. concurred.

Judgment affirmed.