The opinion of the court was delivered by
Tod,J.
Whether the witnesses could give opinions without facts, is a point which, we think, does not arise in the case; heeause, every *411 witness appears to have mentioned some fact of some sort, upon which he grounded his opinion.
On the second point. — The evidence by Mr. Forward, showing what the two witnesses, since deceased^ had sworn oh the former trial, is objected to, because Mr. Forward did not recollect their testimony independent of his notes, because he did not recollect the cross-examinations, and because, even with the aid of his notes, he would not-undertake to give more than the substance of the former testimony. It has been strongly urged by the plaintiff’s counsel to be the incontested modern doctrine of the law, that a person admitted to prove what has been formerly-sworn by a witness since deceased, must' repeat the identical words of the first witness, or he cannot be heard. This strictness, this nicety is not, as I take it, required in Pennsylvania. In the first case on the subject, Miles v. O’Hara, (4 Binn. 110,) Tilghman, C. J., indicates his opinion unequivocally, that no witness, in giving,this sort of second hand evidence, is bound to the precise vyords, and that no note taken is expected to set down all the tedious and superfluous matters with which an account of facts may be encumbered; and that swearing to his belief that the notes contain the true substance, is sufficient. It is said, these were but dicta of.the chief justice, which were not adhered to in the subsequent, cases of Lightner v. Wyke, and Wolf v. Wyeth. But, certain it is, that in the very last case on this head, a case most full to the point, Cornell v. M'Cord’s Administrator, (10 Serg. & Rawle, 14,) those dicta of the chief justice'were reasserted by the.whole court. As to. Mr. Forward’s not remembering the cross-examination, there was no proof of any cross-examination in the ease, much less, was there proof that the cross-examination produced any matter worth remembering. The rule of law is undisputed, that what a witness who dies had sworn to on a former trial between the parties is evidence, if it is preserved and can be repeated, and shall not inevitably perish by the death of the witness who gave it. But, if this sort of evidence must be suppressed altogether, if not repeated in the precise identical words of the first'witness, and .he who is to state it is to be stopped at once unless, he binds himself by oath to.all the very expressions, then I apprehend the legal right to offer such proof is merely nominal, and never can be exercised. For I hold it to be impossible, that any person worthy of credit, attending without any interest of his own to the evidence in a cause, will five years afterwards, as in this case, or five months afterwards, undertake upon his oath, to repeat,that evidence word for word. ' Equally impossible, in my opinion, it will be to find an advocate or judge, so accurate and laborious as to set down all the expressions of the witnesses in a long trial, vyhether to the purpose or not to-the purpose. Without notes one may remember .substance. But that he should after á lapse of years be able to state correctly mere words, and all the words, without having taken any note in writing at the time, is, I think, out of the *412 question. In the present case, the Only .chance of approaching to the precise language used by the witnesses, dead since the former trial, must be from' the notes' of the judge or the counsel. In slander, which, perhaps, more than any other action, depends upon identity Of expression, a witness is never obliged to remember every word spoken., Without pretending to-give all, he may give' what he -does remember. In case of proof by parol of the contents of a deed or written instrfiment, lost, or withheld by the opposite party, it was never- heard of, that a witness was stopped unless he would promise on oath to, repeat the written instrument verbatim. I cannot find, that this nicety of. giving the indentical words of a deceased witness‘was. ever required, or so much as mentioned in any English book down to the time of Rex v. Joliffe, and then only in a dictum of Lord Kenton. See Vin. Ab. Evidence, T. B. 88, pl. 4. Taylor v. Brown, T. Raym. 170. Anonymous, 2 Show, 163. Pyke v. Crouch, 1 Lord Raym. 730. Patton v. Walton, 1 Stra. 162.
When the counsel for the plaintiff argue how imperfect this sort of second hand' evidence must be, particularly when- coming from counsel, tinged by all their prejudices in favour of their own client, they say nothing but what I most fully concur in. It is evidence which has in it.nothing like the sanctity of a deposition. It specially requires the good sense of a jury. Counsel may sometimes take notes chiefly to assist their own. arguments. They may set down part, and trust to memory for part. But, if the notes on one side are not fully trusted,’w'hat more obvious correction than to havfe the notes on the other side produced and sworn to,, if they can be sworn to, oi; the notes of the judge, or recourse had to the memory of jurors, or other persons present, if it shall be insisted, that memory is safer than writing? ■'
But there- is another point of much more difficulty: whether evidence of the former testimony of Robert Hays could be received, he,- Hays, being yet in full life, and residing in the county, but excluded from his oath by subsequent interest in the cause. It .is contended, on the part of the defendant, that evidence legal and true in 1823, must, in the same case, between the same parties, be legal and true in 1828: and the invariable practice in chancery, and positive authority of all the cases in equity, for two hundred years,are relied on, backed, as supposed, by the decision in Hamilton’s Lessee v. Marsden, (6 Binn. 45.) I agree, that in argument, it may be hard to show, since truth and fact must ever continue the same, how, when once declared by a competent witness, théy can cease to be truth and fact, or how they can be tainted by a subsequent unforeseen interest being thrown upon, or-assumed by the witness. But still I must come to the conclusion, that the law is settled the other wáy¿ settled beyond.the reach of argument. It is ádmitted, that such evidence is forbidden by the common law. The rule of chancery has not been adopted .-in Pennsylvania, but expressly re *413 jected. Irwin, for the use of Simpson, v. Reed, (4 Yeates, 511,) seems conclusive. All the court there agreed that such evidence had never been admitted: and the case appears to be not in any respect contradicted by Hamilton’s Lessee v. Marsden, (6 Binn. 45.) Even suppose A manifest improvement in adopting the chancery practice, yet it seems of the first importance, that the rules of evidence should be steady, and leave as little as possible to the discretion of the judge. If an improvement, it is one which seems beyond judicial authority. We may well repeat the question which was asked by one of the judges in Irwin, for the use of Simpson,v. Heed, whether the party himself .shfill be next called tó testify in his own case, according to the practice of chancery? We know the usage has always been for chancellors to trust themselves with evidence which never in any ease has been permitted to go to a jury. On the very page in 1 Eq. Ca. Ab. (224,) whence has been read one of the chancery cases in this'argument, We find it laid down as the law of evidence in.equity, that a legatee of a small legacy, as five shillings to a private person, and five pounds to a nobleman, may be a witness to support the will, graduating by a most uncertain rule, if rule.it can be called, the competency of the evidence by the rank of the witness, and the amount of the.temptation. Therefore, we think, in point of law there was this.error, which we apprehend to be material, in admitting Mr. Forward’s evidence of the previous testimony of Mr. Hays. And we award a new trial.. Upon the .merits of the cause.on matters of fact, which have been argued on both' sides,, we give no opinion.
New trial'awarded.