## I Rankin *against* Tenbrook.

A tenant cannot destroy his landlord's possession by a secret agreement to attorn to another. A tenant cannot, therefore, by any agreement or acknowledgment of the title of a third person, so affect his landlord as to destroy the right which he would otherwise have by reason of an adverse possession for twenty-one years.

ERROR to *Mercer* county.

This was an action of ejectment by Richard Tenbrook and wife against William S. Rankin and Boon M'Millen, for five hundred acres of land.

The plaintiff, Tenbrook, showed title in right of his wife, who was the heir of Captain H. Becker, the owner of Donation tract, No. 50, for which this ejectment is brought. Col. Campbell, it would seem, had some claim upon it, for money advanced to Becker, which does not distinctly appear: but it was in evidence, that he employed Judge Brown as his agent to attend to it, and Brown leased it, first for one year to Samuel Byers, and in the spring of 1813, to Samuel Clingan, who went into possession which he continued until the spring of 1833, when the defendants entered into possession. Certain letters from Clingan to the plaintiff were given in evidence. The first was dated in 1822, stating that Brown had threatened to eject him from the place, inquiring whether it was the plaintiff's, and whether he should continue in it as usual, or leave it; that the plaintiff had given him an assurance to live on the land; and inti-

[Rankin v. Tenbrook.]

mating a desire to purchase a part, and that he did not wish to leave it unless the plaintiff said so. In 1827, he repeats his desire to purchase eighty or one hundred acres, and names the price and terms: states that he had paid the taxes and made improvements, but got no encouragement yet, and wishes to know whether the plaintiff would sell. In 1830 he mentions having received a letter from the plaintiff in 1828; that he still remained on the place, and explains his having cut timber, (of which complaint had been made to the plaintiff,) for the purpose of paying the taxes; and inquires whether it was the plaintiff's orders he should leave it; if it were, it would be better to do so.'

The plaintiff having shown title, the defendant rested on an adverse possession of twenty-one years in themselves and prior tenants under Campbell. The court charged that Clingan having agreed to become the tenant of the plaintiff within the twenty-one years, his possession was not adverse, and the statute did not operate.

*Sullivan,* for plaintiffs in error.
*Banks,* and *Pearson* contra.

The opinion of the Court was delivered by
SERGEANT, J.—The principle laid down by the court that the possession of the tenant is the possession of his landlord, and, therefore, it cannot be adverse so as to bar the landlord's recovery by the lapse of twenty-one years, is undoubtedly correct, and if the question were here merely between the plaintiffs and defendants, would rule the present case; for, though there is no evidence of any lease by the plaintiffs to Clingan, or receipt of rent, yet there is, perhaps, in the letters of Clingan, such an acknowledgment of title, and admission of the right of the plaintiff, as would authorise us to consider him as his tenant. But there are others whose rights are invoked in the case; for if the plaintiff recovers against the defendants, he not only ousts them, but also Campbell, under whom Clingan came into possession, and for whom he was bound to hold it. It is true, Campbell is not a party directly to this suit; but as landlord of Clingan he is affected by its result, and the defendants may depend on his title. Can Clingan, then, under the circumstances of the case, be considered as the tenant of the plaintiff? He came in originally under Campbell; he was his tenant from year to year; and his tenancy did not terminate by lapse of time, surrender, or any of the ordinary legal modes in which a term must expire. Did it, then, terminate by Clingan's agreement to attorn to the plaintiff? It is not in the power of the tenant to destroy his landlord's possession by a secret agreement to attorn to another person. Such agreement is, in law, deemed fraudulent and collusive, and, therefore, void and of no effect. The relation existing between landlord and tenant imposes duties on both. The tenant is bound to hold the possession for the landlord, and deliver it up to him at the expira-

tion of the term. He cannot dispute the landlord's title. He cannot set up an adverse title against it. Galloway *v.* Ogle, 2 *Binn.* 471; Graham *v.* Moore, 4 *Serg. & Rawle* 467. He may show that the lease was obtained by fraud or menace, and, therefore, a nullity. Hamilton *v.* Mason, 6 *Binn.* 45. But he cannot terminate it by a secret arrangement with a third person, made without the act or knowledge of his landlord. If he could, owners of lands entrusting them to tenants, and resting upon the security of their possession, might be betrayed by the tenants delivering that possession to another, and thus divesting them of their rights. A third person claiming title cannot gain possession by thus tampering with the tenant of another. I think the whole doctrine of landlord and tenant goes to establish this principle, and that fidelity of the tenant to the landlord, under whom he came into possession, is the corner stone of that relation in law between the parties. In *Doe dem.* Knight *v.* Lady Smythe, 4 *M. & S.* 347, it was decided that a third person cannot defend, as landlord, upon the trial of an ejectment, when it appears the tenant in possession came in as tenant to the plaintiff, and paid rent to him under an agreement that has expired. It is said, by the court, he cannot put another person in possession, but must deliver up the premises to his own landlord. In Meredith *v.* Gilpin, 6 *Price* 146, after an adverse possession by the plaintiff of twenty-three years, his tenants paid rent to the defendants, and it was held, on the plea of *liberum tenementum* in trespass, that it did not amount to an attornment unless the consent, or, at least, the knowledge of the landlord could be shown. The decision was, in effect, that such an act of the tenant, behind the back of the landlord, did not put a third person in possession, though claiming title. So in Rees *dem.* Powell *v.* King, *Forrest* 19, though a lessee set up an adverse title to the property in the premises he holds under a lease, yet that does not incapacitate him from maintaining possession under the lease. And in *Bull. N. P.* 102-3-4, it is laid down, that receipt for rent by a stranger is no evidence of possession so as to take it out of him who the right has, not even though he made a lease to the tenant reserving rent, unless he made an actual entry. So, though the tenant declare that he is in possession for the stranger, though it may be proper to be left to a jury, especially if the stranger have any colour of title. *Ibid.* That is, as I understand it, there must be an actual entry, or perhaps a public declaration of the tenant that he held under an adverse title might be deemed an ouster, if known to the landlord and acquiesced in. No evidence was given, in the present case, that Campbell or his agent, Brown, had any knowledge of the correspondence between Clingan and Tenbrook, the plaintiff. It was the duty of Tenbrook, the plaintiff, to eject the tenant, or, at least, there should be evidence of some overt act, or declaration disseising Campbell, and of his acquiescence therein. Till then, Clingan's possession was Campbell's, and may be set up against the plaintiff in this ejectment.

Judgment reversed, and *a venire facias de novo* awarded.