| 28 | 371 |
|----|-----|
| 83 | 157 |
| 83 | 384 |

---

THOMAS J. THURMOND v. HENRY TRAMMELL ET AL.

To repel the defense of the statute of limitation, in actions for the recovery of specific personal property, evidence of verbal acknowledgments by the defendant of the plaintiff's title to the property may be sufficient for the purpose of showing that his claim and possession were not adverse to the plaintiff, or that he recognized the title of the plaintiff and claimed under it. (Paschal's Dig., Art. 4617 a, Note 1027 a.)

But when, in such actions, the evidence clearly shows an adverse holding by the defendant for a period sufficient for the statute of limitation to become available as a defense, an acknowledgment by the defendant of title to the property in the plaintiff, unaccompanied by evidence of an intention or willingness on the part of the defendant to submit to the title so acknowledged, and especially if he refuse to deliver the property to the plaintiff, will not defeat the bar of the statute. (Id.)

Therefore, where the evidence showed that the defendant, contemporaneously

with her acknowledgment of the plaintiff's title to the slave in controversy, refused to submit to the title or surrender the slave, it was not error for the court to decline to charge the jury unqualifiedly that the acknowledgment of the plaintiff's title, if made within two years previous to the commencement of the suit, would defeat the defense of the statute of limitation.

The court below gave the instruction asked, with the qualification that, in order for the acknowledgment to defeat the defense of limitation, the defendant must have understood the effect of the admission, to wit, that it gave up her right to the negro; and further charged that, if the defendant had for two years or more continuously set up claim to the slave as her own, and had the peaceable possession of the slave for that time, this vested the title in the defendant; and that a simple admission by her of the plaintiff's title, coupled with the declaration that she could and would hold the slave as her own, would not defeat the bar of the statute: *Held*, by this court, that the charge was as favorable to the plaintiff as he had a right to expect. (Paschal's Dig., Art. 905, Clause 4, Note 909, p. 652.).

The defendants proposed to prove the oral·testimony given at a former trial by a witness since deceased. The plaintiff objected that the defendants had failed at a former trial to make such proof, whence plaintiff had a right to believe it would not be now offered, and that defendants had not shown that they could not obtain the same evidence from other sources: *Held*, that the objections were properly overruled.

A party cannot be required to give notice what witnesses he will introduce and rely on at the trial; he may bring such witnesses to sustain his case as he is able to bring.

Though formerly required, it is not now necessary that a person called to prove the testimony given at a former trial by a witness since deceased should repeat the precise words of the deceased witness. It is sufficient that he state the substance of the testimony.

Appeal from Gonzales. The case was tried before Hon. Fielding Jones, one of the district judges.

The case turned upon the facts·and the instructions.

The character and main facts of this case are substantially stated in the opinion of the court. The petition was filed on the 5th of February, 1857. The defendant, Julia Ann Trammell, was a daughter of the plaintiff, Thurmond.

At the spring term, 1861, the trial was had from which the present appeal was taken. The charge requested by the plaintiff was as follows: "In order for the defendants to hold the slave by the statute of limitation of two years,

the claim, as well as possession of the property, for two years previous to the institution of the suit, must be made to the property; and if the jury believe from the evidence in this case that defendant, Julia Ann Trammell, admitted, within two years previous to the institution of this suit, that the slave belonged to plaintiff, then defendants could not claim and hold the slave in question by reason of the statute of limitation." To which the judge appended the following : " This instruction I give with this qualification, that Mrs. Trammell understood the effect of the admission, to wit, that it gave up her right to the negro. But if you believe that she had for two years or more continuously set up claim to the slave as her own, and had the peaceable possession of her for that time, it would vest the title in her; and a simple admission of the plaintiff's title, coupled with a declaration that she could hold her as her own and would not give her up, would not defeat the running of the statute."

Verdict and judgment for the defendants. The plaintiff's motion for a new trial was overruled, and he appealed, assigning errors which are indicated in the opinion of the court.

*Parker & Miller*, for appellant.—Possession alone can never give title, however long continued; but possession, accompanied with a continuous claim to the fee or title for two years previous to the institution of suit, would in ordinary cases give title, but the claim must be notorious and continuous, not made at one time and denied at another, and made to one person and denied to another. (Grumbles v. Grumbles, 17 Tex., 472.)

The admission by Mrs. Trammell and her husband that the title to the slave was in her father, (the plaintiff,) was an admission that they held in subordination to a better title, and hence that they held possession by consent of the owner. (Ang. on Limit., § 384, p. 462.)

The admission of plaintiff's title by defendants, in August, 1856, was unqualified.

We submit, that the charge asked was in accordance with law and the evidence in the case. It was error to give this charge with a qualification. The statute requires the presiding judge to give or refuse charges asked, and to specify in writing what charges he gives and what he refuses. (O. & W. Dig., Art. 487.)

The charge asked in this case was neither given nor refused, but was qualified in the following words by the judge: "If Mrs. Trammell understood the effect of the admission, to wit, that it gave up her right to the negro." This was clearly not the law of the case, and goes upon the principle that ignorance of law would excuse Mrs. Trammell, when in fact she was bound to know the legal effect of her admissions.

There was no issue, either in the pleadings or evidence, as to whether Mrs. Trammell understood the legal effect of her admission, and nothing to support this qualification, even if it had been law.

This qualification entirely nullified the charge asked, and was calculated to, and we think did, mislead the jury.

The evidence, as well as the amended answer, shows that defendants held said slave by virtue of a mortgage to McLean, in Louisiana, which had been bought up by defendants, and plead in the amended answer. It was through this mortgage they acquired possession of the slave; this was the title Mrs. Trammell set up to her. We submit, then, that Trammell and wife were only mortgagees of the slave, and that they would hold in trust, subject to the title of the plaintiff, more especially where the relation of father and daughter supervened; and where possession was acquired in this way, the law would hold Trammell and wife to be trustees for the benefit of plaintiff. (Story's Eq., §§ 1520, 1521.) And this relation would stop the running of the statute of limitation, not only until

there was an absolute claim by defendants to the negro and a refusal to acknowledge the trust, but they must prove that plaintiff had notice of their intention to claim in their own right; and to disallow the trust and general acts of ownership and claim would not be sufficient. (Gilkey v. Peeler, 22 Tex., 663; Turner v. Smith, 11 Tex., 620; Grumbles v. Grumbles, 17 Tex., 472.)  And the statute would not commence to run until after such notice was proved to have been given to the owner.

No brief for the appellees.

DONLEY, J.—This was a suit by appellant against appellees, alleging that appellant was the lawful owner of a certain negro woman, a slave; that said negro had been five years in the possession of defendants; that her services were worth $175 a year; that defendants had paid a part of the money due for hire, but refused to pay the balance, and also refused to deliver said negro to the plaintiff.

The defendants in their answer say that the negro was the property of the defendant, Julia Ann Trammell, derived by gift from her grandfather.   They deny that they hired said negro woman from the plaintiff, or that they ever paid plaintiff anything for the hire of the woman, and they plead the statute of limitation.   They aver that plaintiff had illegally mortgaged the woman Phebe to one McLean; that McLean refused to deliver said woman to the defendants until defendants should pay the money due on the mortgage, upwards of $300; and that, to obtain the property, defendant, Julia Ann Trammell, paid to McLean the mortgage debt of $327, and by that means was restored to the rightful possession of the negro woman.

W. D. P. Thurmond, a witness for plaintiff, testified that he saw the girl Phebe in possession of the defendants in August, 1856; knew her to be the same his father had left with McLean in 1842; that defendants said they had

obtained the woman from McLean as they were moving to Texas in 1852. Witness testified that the woman Phebe was at that time the property of plaintiff, and that the defendants said they would buy her if plaintiff would sell. The girl was about thirty-seven years of age, and had been in possession of plaintiff as far back as witness could recollect, till left with Mclean in 1842. Witness was about the same age as the girl; he had always understood that the girl was born on his father's place. Witness was with plaintiff at defendants' in August, 1856. Plaintiff had gone there to get the girl Phebe. Defendants refused to let him have her, stating that plaintiff ought to give them the girl. When plaintiff refused to give the girl to defendants, they offered to purchase her, but the plaintiff declined to sell. It was in this general conversation that the defendants acknowledged that the negro belonged to plaintiff.

Celia Woodbridge testified that she knew the negro woman Phebe; last saw her in 1853 in possession of defendants. That in 1852 she, witness, was in company with defendants, moving from Arkansas to Texas, and they passed the house of Mr. McLean. That Trammell demanded the girl of McLean, alleging that she belonged to his wife. McLean gave up the girl with reluctance, as she believed through fear. She knew the negro well; she was raised by plaintiff, and he had possession of her until in 1842, and in 1852 she saw her in possession of McLean. She had heard the defendant, Julia, claim the negro when she was a child, but not because she had been given to her by her grandfather.

Witness Pennington testified that the slave Phebe was raised by plaintiff; saw her in possession of the defendants in 1852; defendant, Trammell, said that plaintiff had mortgaged the woman to McLean for $300, and that he had paid the money and taken the woman. Witness had heard defendant, Julia, claim the slave as her property after they got possession of her in 1852.

Morris May testified that he went to defendants' house to settle the matter without suit; Henry Trammell was not at home; Mrs. Trammell claimed the negro, as having paid $300 to McLean, and in various other ways, but not in her own right. She admitted that the woman was plaintiff's. She, however, brought out a bill of sale from Mc-Lean, and said she could hold the girl under that bill of sale, and would not give her up. She said she had paid the mortgage money to McLean, and could hold the girl.

Defendants introduced witness Askey, who said the first time he saw the woman, Phebe, she was in possession of defendants. This was six or seven years before testifying, and Mrs. Trammell has claimed the negro all the time from then till the time of testifying as her separate property. Her claim and possession were open and notorious all the time. Witness was present when William Pennington testified on a former trial of this cause; he is now dead. Witness knows that Pennington said in substance that he was about plaintiff's a good deal, and knew that the girl, Phebe, was considered and spoken of in the family as belonging to the defendant, Julia; that Phebe was given to Julia by her grandfather, plaintiff's father; that plaintiff told the witness, Pennington, that he had mortgaged defendant's, Julia's, negro woman, Phebe, to McLean, and that he was going to redeem her, as he would not allow her negro to be sold.

Plaintiff objected to proving the statements of Pennington, because at a former trial the defendant had failed to try to prove said declarations, and that defendant did not show that he could not obtain the same evidence from other sources, and that the witness did not remember the evidence of Pennington well enough to prove it. The objections were overruled.

W. A. Nations also testified as to statements given in evidence by the witness Pennington, now deceased, at a former trial of the cause; his recollection of his testimony

was the same as witness', Askey's. Defendants proved by Henry Trammell that he heard a conversation between plaintiff and Mrs. Trammell; plaintiff wanted Mrs. Trammell to give up the negro in suit to plaintiff's little son; Mrs. Trammell would not give up the negro. The woman, Phebe, has been in possession of Mrs. Trammell since she was received from McLean. Witness never heard of any claim set up to the negro till suit was brought.

R. Denson testified that Julia Trammell, before her marriage, claimed the negro, and she was called Julia's by the other children; but witness did not remember to have heard plaintiff admit her claim to the negro. Witness was a daughter of the plaintiff.

The first error assigned is, that "the court erred in refusing to give the charge asked by plaintiff." The portion of the charge believed to be referred to in this assignment is, that "if the jury believe from the evidence in this case that defendant, Julia Ann Trammell, admitted, within two years previous to the institution of 'this suit, that the slave belonged to the plaintiff, then defendants could not claim and hold the slave in question by reason of the statute of limitation."

This charge was properly refused. It was withheld from the consideration of the jury whether there was a submission on the part of the defendants to the claim of the plaintiff. The acknowledgment by defendants of title to the property in the plaintiff, accompanied with a refusal to deliver the property to or hold the same under the plaintiff, it is conceived, is not such a recognition of the right of plaintiff as to defeat the defense of the statute of limitation, which was relied upon in the defense of this case. If, at the time of the recognition of the plaintiff's title to the property, the statute of limitation was available as a defense to the action, the admission that the title to the property was in the plaintiff was not sufficient, without a submission to or recognition that he held under the title.

It has been ruled in numerous cases that, to remove the bar of the statute of limitation in case of debt, there must be an express promise to pay, or the admission of a legal liability, without anything to repel an implied promise to pay. There is much uniformity in the American and the later English decisions, that an acknowledgment of the debt, unaccompanied with a declaration or manifestation of willingness to pay, or when accompanied with a refusal to pay, will not defeat the bar of the statute of limitation.

In Harcourt v. Cross, 3 Bing., 329, 333, the court says: "There are many cases from which it may be collected, that if there be anything said at the time of the acknowledgment to repel the inference of a promise, the acknowledgment will not take the case out of the statute of limitation. In the present case, the defendant, at the time he acknowledged the debt, said he would not pay it, because the plaintiff had arrested him." The rule to set aside the non-suit which had been entered was discharged. (Coltman v. Marsh, 3 Taunt., 380.)

In Marray v. Tilley, cited in Fries v. Bassellin, 9 Serg., & Rawle, 128, where a defendant said, on demand of payment, that if the note had been presented in time he would have paid it, but that he knew that the statute of limitation would now bar the claim and he would not pay, it was held that a new promise could not be inferred. (Jones v. Moore, 5 Binn., 573; Glenn v. Rice, 6 Watts, 44; Gallagher v. Milligan, 3 Penn., 179; Burghans v. Calhoun, 6 Watts, 219; Gilkerson v. Larue, 6 Watts & Serg., 218.)

In Sands v. Gelstein, 15 Johns., 511, it is held, "that if at the time of the acknowledgment of the existence of the debt such acknowledgment is qualified in a way to repel the presumption of a promise to pay, it will not be evidence of a promise sufficient to revive the debt and take it out of the statute. (Bell v. Morrison, 1 Peters, 362; Knox v. Bank of Columbia, 6 Peters, 92; Welzell

v. Beeson, 11 Wheat., 309; Gregg v. Bingham, 1 Hill, 299; Cochfield v. Hudson, 2 Bay, 425.)

It is held in Winburne v. Cochrane, 9 Texas, 125, that "the statute, when the bar becomes complete, not only bars the remedy, but vests the right in a slave, which right cannot be set up and sustained in the courts of any other State where the slave should have been moved after such bar should have been completed." (See Newton v. Blakey, 3 Hill, 57; Shelby v. Guy, 11 Wheat., 361; Clark v. Butler, 7 J. J. Marsh., 194.) Most of the authorities cited are in cases in which the promise relied on was to revive a debt that was barred by limitation, and in such cases it is well settled that the action must be upon the new promise, which, in case of a debt, it is clear, must be in writing. In actions to recover specific property, verbal acknowledgments may be sufficient for the purpose of showing that the holding was not adverse, and that the defendant recognized and claimed under the title of the plaintiff; and parol testimony may be sufficient for the purpose of showing that the possession has not been adverse, and that the defense under the statute of limitation cannot be made available.

In cases where the evidence clearly shows an adverse holding for a length of time sufficient for the statute of limitation to be made available as a defense to the action, the acknowledgment of title to property in the plaintiff, unaccompanied with evidence of an intention or willingness to submit to the title acknowledged, and especially if there be a refusal to deliver the property, will not, it is believed, defeat the bar of the statute. It is not perceived that the acknowledgment of the title in this case in the plaintiff, coupled with the refusal to deliver the property to the plaintiff, and a repeated refusal to deliver to his agent, can place the defendants in a worse position than they would have occupied if there had been clear and unquestionable proof of title in the plaintiff, without any

demand being made, and no acknowledgment or state-
ment being made, by the defendants.   The evidence shows
that in 1852 the defendants demanded and obtained the
property from McLean, in whose possession it had been
placed ten years before it was demanded as the property
of the defendant, Julia A.   It was held and claimed by
the defendants as her property for more than four years.
The testimony of the witnesses relied upon as defeating
the defense under the statute of limitation does in fact aid
in that defense.   The plaintiff, with his son, who is the
witness, had gone to the defendants' for the purpose of
obtaining possession of the negro and moving her from
the defendants'.   The negro was present when the plain-
tiff was at the defendants'.   If there was a recognition of
the title of plaintiff, why, as the acknowledged owner, did
he not take possession of the negro and move her to such
place as he desired ?   Such would doubtless have been the
course of plaintiff, if there had been on the part of the
defendants a submission to his claim and title.   The
refusal of the defendants to deliver the negro to the plain-
tiff shows conclusively, that if there was an acknowledg-
ment of title in the plaintiff to the negro in controversy,
the possession of the defendants was adverse and hostile
to the plaintiff's claim.   There is no evidence in the record
that would have authorized a jury to find that the posses-
sion of the defendants was not hostile to the claim and
title of the plaintiff.

The record does not show that the defendants, at the
time of obtaining possession of the negro woman, or at
any time while in possession of the negro, acknowledged
that they were holding under the plaintiff.   When the
demand was made of McLean, they claimed the woman as
the property of defendant, Julia Ann; the possession of
defendants was at all times hostile to the claim and title of
plaintiff, and it was not error to refuse the charge asked by
plaintiff, and to give the charge with the qualification, as

was done.   It is believed that the charge as given was as
favorable to the plaintiff as the law would authorize.
(Mercer v. Hall, 2 Tex., 285.)

It is assigned for error that the court erred in allowing
Askey to prove the declarations of Pennington on a for-
mer trial.   That defendants had failed to make the proof
by this witness on a former trial was no objection to his
testifying at the term when called.   It may have been that
at the preceding trial the defendants were unable to pro-
cure the testimony of the witness.   That the plaintiff did
not expect the testimony to be introduced was no reason
for excluding it.   A party cannot be required to give no-
tice what witnesses he will introduce and rely upon at the
trial.   He may bring such witnesses as he can to sustain
the issue made by him.   Nor were the defendants required
to show that they could not obtain the same evidence from
other sources.   The testimony was legal, and was properly
permitted to go to the jury.

It is said that "when testimony was given under oath in a
judicial proceeding in which the adverse litigant was a party,
and where he had the power to cross-examine, and was legal-
ly called upon so to do, the great and ordinary test of truth
being no longer wanting, the testimony so given is admit-
ted, after the decease of the witness, in any subsequent suit
between the same parties."   (1 Greenl. on Ev., § 163.)

It was formerly held, that the person called to prove
what a deceased witness testified on a former trial must
be required to repeat his precise words, and that testimony
merely to the effect of them was inadmissible.   (Id., § 165.)
Now it seems "to be generally considered sufficient if the
witness is able to state the substance of what was sworn
on the former trial."   (Id.; Todd v. Earl of Winchelsea, 2
Car. & Payne, 387; Lightner v. Wilke, 4 Serg. & Rawle,
205; Chess v. Chess, 17 Serg. & Rawle, 411; Caton v. Le-
nor, 5 Randolph, 31, 36.)

There is no error in the judgment, and it is

AFFIRMED.