## Costello *v.* Pennsylvania Railroad Company (et al., Appellant).

Argued May 27, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Ralph S. Croskey,* with him *John J. Dautrich, John C. Noonan* and *Croskey & Edwards,* for appellants.

*Henry D. O'Connor,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, July 6, 1948:

Judgment was entered on a verdict for $25,000 in favor of the plaintiff on the denial of defendant's motions for judgment n. o. v. and a new trial. The appeal followed. The two questions raised are (1) which of two corporations was the master of the servant who negligently caused an injury to a workman employed by a third corporation? and (2) was the servant acting within the scope of his employment?

Plaintiff, an iron worker, suffered severe injuries while engaged in repairing a machine known as a screw coal conveyor used in a coal yard leased and operated by defendant, the Philadelphia, Baltimore & Washington Fuel Company. The coal yard is owned by the Pennsylvania Railroad Company and was leased by it to the fuel company. Part of the structural equipment of the coal yard is an elevated trestle on which railroad coal cars are shunted for unloading. There are large silos used for coal storage equipped with elevators for placing the coal in the silos. Among other mechanical equipment in the yard is the electrically driven horizontal screw coal conveyor (involved in the accident) which is built in two sections, with a bucket elevator attached. *Each of these three units of this machine is controlled by a separate electric switch located on the premises in a room a short distance from the machine.* The function of the machine is to carry coal, which may have been spilled in loading and unloading railroad cars and trucks, to the silos. On the premises is a business office used by the fuel company, a part of which is said to have been sublet by the fuel company to a corporation known as Crean Brothers, Inc. Electricity is supplied to the premises by the Philadelphia Electric Company. Electric power lines are attached to poles along the street abutting the premises. For the purpose of supplying the coal

yard with electricity, the electric wires are connected with a transformer affixed to a pole erected in the street outside the coal yard. Electricity is passed along the electric wires through the transformer to wires running into the coal yard and thence to the various electrical appliances used on the premises. On the day of the accident, and for a day and a half prior thereto, the screw conveyor was being repaired. Plaintiff was a workman employed by a subcontractor and was engaged in making the repairs. The record does not disclose with definiteness whether the landlord or the tenant owned the machinery involved in the accident. In the opinion of the court below it is stated that the machine was owned by the tenant (appellant). Counsel for the appellant, however, in his brief, states that the machinery was owned by the landlord (the railroad company). It does not appear in the evidence with whom the subcontractor made the contract for the repairs. Prior to the date of the accident, the electric pole and the transformer, owned and maintained by the electric company, had been damaged by being struck by an automobile. The electric company thereupon replaced the pole and attached another transformer. When the work was completed, Cameron, the foreman of the electric company, went into the office of the fuel company and requested that a motor be started in order to ascertain if electricity was properly passing through the wires. Whether this request was made to the office employe of the fuel company or to an employe of the subtenant, Crean Brothers, Inc., does not clearly appear. The electric company's foreman was told by the person in the office to see the yard foreman who had exclusive charge of all motors. Cameron then went into the yard and repeated his request to Kammerer, the superintendent of the subcontractor who employed the plaintiff. Kammerer stated that *he* had no authority to start any motor but that Cameron should go to the yard foreman, Carr, whom he pointed out. It was testified, without contradiction,

that Carr *was the only one authorized to start a motor*. Cameron and Carr then came to Kammerer, and Carr asked Kammerer whether it was all right for him to start a motor. Kammerer replied, *"you can start the elevator but don't start the conveyor"*. Carr and Cameron then went to the switch room. Carr pressed *two of the switch buttons*. The result was that the conveyor on which plaintiff was working was started which caused serious injury to plaintiff.

No one seriously questions the finding of the jury that Carr was negligent. There was an obvious failure to exercise ordinary care under the circumstances. Neither can it be held that the verdict was excessive. Plaintiff lost a leg and endured great pain and suffering. The injury permanently deprived plaintiff of his livelihood as a structural iron worker.

Plaintiff sued the landlord (the railroad company), the tenant (the fuel company), the subtenant (Crean Brothers, Inc.) and the electric company. The trial judge directed a verdict for three of the defendants, viz: the railroad company, Crean Brothers, Inc., and the electric company. He ruled as matter of law that Carr, the yard foreman, was employed by the fuel company and that he had acted within the scope of his employment. The question of Carr's negligence was left to the jury.

The opinion of the court below in dismissing defendant's motion for judgment n. o. v. seems to have been delivered under a mistaken impression that the trial judge had left it to the jury to determine whether the electric company *or* the fuel company was jointly or severally liable as employer of Carr. An examination of the charge, however, reveals that the trial judge gave binding instructions in favor of the electric company. This error is harmless. What the learned trial judge said *in his charge* is correct. There was no conflicting evidence or fact left in doubt as to which company employed Carr, the yard foreman. There is no evidence that

the electric company employed the yard foreman or that the relation of master and servant existed between him and the electric company. The court therefore correctly directed a verdict for the electric company. Where the facts are admitted or are so clearly and conclusively proved as to admit of no reasonable doubt, it is the duty of the courts to declare the law applicable to them: *Koons v. Steele*, 19 Pa. 203, 210; *Mary Philpott v. The Pennsylvania Railroad Company*, 175 Pa. 570, 575, 34 A. 856; *Shapiro v. Philadelphia Electric Company*, 342 Pa. 416, 422, 21 A. 2d 26; *Kenyon v. Bloeser et al.*, 100 Pa. Superior Ct. 25, 33.

Counsel for appellant strenuously argues that the landlord (the railroad company) owned the machine and made a contract for its repair with an independent contractor and therefore until the machine had been repaired and returned to the tenant (the fuel company) the defendant had been "ousted and evicted" from the use of the machine and hence in the meantime the machine was in the sole and exclusive custody and control of the independent repair contractor. With this argument we disagree. There is no positive or inferential testimony that the *landlord* made the contract for the repair of the machine. But in the facts of this case, however, it is immaterial whether the landlord or the tenant owned the machine. There is no proof that the electric company supplied electricity solely *for the operation of the machine involved in the accident.* Upon the contrary it appears that the electric company, a public service corporation, supplied electricity for the use of *the entire yard and all of the electrically driven equipment used therein.* All electricity used in the yard either for power or light passed through the transformer on the pole in the street and through wires to the coal yard. The argument of the appellant erroneously *assumes* that the only electricity supplied was to operate the machine then under repair. When the public service company was prepared to resume its service to the yard, it was

necessary to determine whether the electricity was being properly transmitted. Under such circumstances the request of the electric company's foreman to the defendant's yard foreman was a proper and necessary one. Compliance with the request was in the interest of the fuel company and came clearly within the scope of the employment of the defendant's employe. That the employe was negligent, as found by the jury, cannot be seriously questioned. Despite specific warning, defendant's employe carelessly started the motor causing the machine to rotate and resulting in plaintiff's serious injury.

The motion for judgment for defendant n. o. v. was properly refused. We will not disturb the exercise of the discretion of the learned court below in refusing a new trial.

Judgment affirmed.