## Francart v. Smith

586

*William Gallagher,* for plaintiff.
*Alexis Barbieri,* for defendant PennDOT.

STIVELY, *S.J.,* June 12, 1989 — The instant negligence action, which was tried before this court in November 1987, is once against before us pursuant to cross post-trial motions for judgment notwithstanding the verdict and/or for a new trial of plaintiffs and defendant, Commonwealth of Pennsylvania, Department of Transportation (PennDOT), and on PennDOT's motion in the alternative to mold the verdicts entered against it. Briefly stated, the salient facts of this case are as follows:

On September 6, 1983, plaintiffs' decedent, 11-

year-old Amanda Francart, was in the process of crossing Pennsylvania Route 896 near her home in Franklin Township, Chester County when she was struck first by a southbound vehicle being operated by defendant Smith and propelled into the path of defendant Sanders' vehicle which was traveling in the northbound lane. Amanda Francart suffered immediately fatal injuries as a result of this accident.

Plaintiff subsequently commenced this action against the drivers of the two vehicles involved and against PennDOT alleging, inter alia, negligence and inadequate and improper design and signing of the highway. Following a bifurcated trial on the issues of liability and damages, the jury returned a verdict in favor of plaintiffs in the net amount of $600,000.

## Cross-Motions of the Parties for Judgment N.O.V.

In support of their respective motions for judgment PennDOT and plaintiffs assign as error this court's failure to give certain binding points for charge as submitted by each party. Specifically, PennDOT contends that the court erred in refusing to direct a verdict in its favor on the grounds that the evidence produced by plaintiffs failed to prove, in essence, that the commonwealth defendant owed them any duty, that it breached that duty, and that this breach proximately caused the death of plaintiff's decedent. Plaintiffs, in turn, allege that the court's failure to instruct the jury that Amanda Francart could not be negligent as a matter of law entitles them to the relief requested. We disagree and therefore deny both motions.

The standard for deciding whether or not to grant a motion for judgment notwithstanding the verdict has long been established in this commonwealth.

Thus, in considering a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, who is to be given the benefit of every reasonable inference of fact arising therefrom and any conflict in the evidence must be resolved in that party's favor. *Broxie v. Household Finance Company*, 472 Pa. 373, 372 A.2d 741 (1977). A judgment n.o.v. may only be entered in the clearest of cases where the facts are such that two reasonable persons could not fail to agree that the verdict was improper. *Caldwell v. City of Philadelphia*, 358 Pa. Super. 400, 517 A.2d 1296 (1986), allocatur denied 535 A.2d 1056 (1987); *Tonkovic v. State Farm Mutual Auto Insurance Company*, 337 Pa. Super. 123, 486 A.2d 512 (1984), rev'd on other grounds, 513 Pa. 445, 521 A.2d 920 (1987); *Dambacher by Dambacher v. Mallis*, 336 Pa. Super. 22, 485 A.2d 408 (1984).

For these reasons, binding instructions after the presentation of the defense's case are sustainable only where the evidence is insufficient to support the plaintiff's cause of action. *Highland Tank & Manufacturing Co. v. Duerr*, 423 Pa. 487, 225 A.2d 831 (1966); *Stern v. Vic Snyder Inc.*, 325 Pa. Super. 423, 473 A.2d 139 (1984). A similar standard applies when assessing the sufficiency of the evidence. That is, the court must review all of the evidence and all reasonable inferences arising from it in a light favorable to the plaintiff and determine whether a jury could reasonably conclude that the elements of the cause of action have been established. *Mazza v. Mattiace*, 284 Pa. Super. 273, 425 A.2d 809 (1981).

In instructing the jury, it is the obligation of the trial judge to ensure that the members of that jury understand and comprehend the factual questions which they must decide. *Scarborough by Scarbor-*

*ough v. Lewis,* 359 Pa. Super. 57, 518 A.2d 563 (1986); *White by Stevens v. Southeastern Pennsylvania Transportation Authority,* 359 Pa. Super. 123, 518 A.2d 810 (1986), allocatur denied, 529 A.2d 1082 (1987). In negligence cases, it has therefore been said that the instructions must give the jury a reasonable guide for determining the question of the defendant's or the plaintiff's alleged negligence and the degree of care or duty to inspect required by any person. The jury cannot determine whether a party is guilty of negligence or contributory negligence without knowing the degree of care required of that party. *Wood v. Smith,* 343 Pa. Super. 547, 495 A.2d 601 (1985), citing *Croty v. Reading Industries,* 237 Pa. Super. 1, 345 A.2d 259 (1975). Hence, in reviewing allegedly incorrect jury instructions, the charge must be read in its entire context — the presence of one erroneous sentence in that charge will not warrant a new trial if it does not constitute fundamental and prejudicial error in the context of the whole. *Naccarati v. Garrett,* 351 Pa. Super. 437, 506 A.2d 428 (1986).

Finally, we note that in wrongful death actions and in those cases where the injured person is unable to speak from himself, there is a presumption that the decedent had been exercising due care at the time of the accident. *Waddle v. Nelkin,* 511 Pa. 641, 515 A.2d 909 (1986); *Hawthorne v. Dravo Corporation, Keystone Division,* 352 Pa. Super. 359, 508 A.2d 298 (1986), allocatur denied, 521 A.2d 932 (1986). Where children between the ages of seven and 14 are involved, a presumption that they are incapable of negligence arises which then shifts the burden to the defendant to produce evidence of negligence in rebuttal. *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957); *Berman by Berman v. Philadelphia Board of Education,* 310

Pa. Super. 153, 456 A.2d 545 (1983). Moreover, when measuring the conduct of children, courts depart from the well-known objective test of the care of a reasonable and prudent man, the test generally utilized to test adult behavior, and make allowances for immaturity. A child is therefore held to that measure of care that other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. *Dunn v. Teti*, 280 Pa. Super. 399, 421 A.2d 782 (1980).

Applying the foregoing standards to the matter at bar and addressing PennDOT's allegations first, we find that sufficient evidence was presented by plaintiffs in the liability portion of the trial to permit the jury to come to the conclusion that the commonwealth defendant was negligent in its design and maintenance of the roadway and that this negligence was a substantial factor in causing Amanda Francart's death. This evidence took the form of oral testimony from decedent's parents and neighbors and from defendant Timothy Smith that the curve in the roadway where decedent was struck was, in effect, a blind curve and that the shoulders in that area had recently been narrowed by PennDOT's construction and were overgrown by vegetation. There was further testimony to the effect that there were no speed limit or curve warning signs in the area, thereby making the speed limit 55 miles per hour and that that section of roadway was frequently used by pedestrians.

Finally, there was also expert testimony that the shoulder width in the vicinity of the accident site should have been wide enough to allow a pedestrian to walk along the side of the road without having to cross it, thereby giving rise to the conclusion that the accident would not have occurred had Amanda not found it necessary to cross Route 896 to get

home. Hence, since the facts thus admitted did *not* clearly and conclusively indicate that the only inference to be drawn therefrom was in defendant's favor, no error was committed in refusing its request for a directed verdict. See generally, *Costello v. Pennsylvania Railroad Company,* 359 Pa. 562, 60 A.2d 28 (1948); *Anthony Wayne Terrace Housing Association v. Bedio,* 186 Pa. Super. 335, 142 A.2d 482 (1958); *Downingtown Farmers Market and Auction Co. v. Rose,* 56 D.&C. 2d 331 (1971).

Turning next to plaintiff's allegations, we similarly can find no error in the charge to the jury regarding decedent's negligence. Although it is true that the jury was not specifically informed that children between the ages of seven and 14 are initially presumed to not be negligent, we find that all of the other points which plaintiffs claim were erroneously not given, were in fact covered. While plaintiffs would have had us use language which was somewhat different from that given to the jury, our review of the charge as a whole indicates that it was sufficiently clear to guide the jury in its deliberations and was not misleading. Specifically, the charge on this issue reads as follows:

"There has been argued to you what the law calls a presumption of due care. The law on that point is as follows: The law presumes that at the time of the accident causing the death of a person, the decedent was using due care, ordinary care for her own safety in this case.

"This is a presumption. The law presumes that. This is a presumption that may be rebutted — that is overthrown, removed from the case by the evidence.

"If you find from a preponderance of the evidence that the decedent was not exercising such care, then, of course, you would have to find her negli-

gent, because the presumption of her taking due care for her own person would be overthrown by the preponderance of the evidence indicated in the contrary.

"So there is a presumption that the deceased used due care for her own protection. That can be rebutted or set aside by a preponderance of the evidence to the contrary.

"Amanda Francart was 11 years of age. In that instance, there is an applicable principle of law, and you will notice that this does not use the word presumption, which I think was used in argument, because it is believed now that the use of the presumption is not quite correct here. But this is the law; and, essentially, it involves what we used to call a presumption.

"The law does not hold children to the same standard of care as adults . . . A child is required to exercise the ordinary care appropriate for a child. Specifically, he or she is held to the measure of care which other children of the same age, experience, capacity and development would ordinarily exercise under similar circumstances. That's the category that Amanda fits into. . . . "

In so charging, the court utilized the proposed language set forth in Pennsylvania Standard Civil Jury Instruction no. 3.10(II), the comment to which states:

"For children between the ages of seven and 14, the standard is as set forth in Part II. *Sellers v. Runkle,* 439 Pa. 312, 267 A.2d 847 (1970); *Masters v. Alexander,* 424 Pa. 65, 71, 225 A.2d 905, 909 (1967); *Zernell v. Miley,* 417 Pa. 17, 20, 208 A.2d 264, 265 (1965); *Kuhns v. Brugger,* 390 Pa. 331, 340, 135 A.2d 395, 401 (1957); *Patterson v. Palley Mfg. Co.,* 360 Pa. 259, 267, 61 A.2d 861, 865 (1948); *Butler v. Morris,* 212 Pa. Super. 466, 243 A.2d 140

(1968). No mention is made of the presumption here. The burden of establishing negligence or contributory negligence is in any event on the other party. To add talk of presumptions would only serve to confuse the jury, the more so in this case since the force of the presumption weakens with every passing year. In fixing the proper standard for a particular age, the jury may use common knowledge and if evidence should be required in an unusual case, the judge can readily rule on the burden of going forward with the evidence and the burden of proof."

Accordingly, we find no error in our failure to charge the jury on the rebuttable presumption of Amanda's non-negligence.

## PennDOT's Motions for New Trial on Liability

In the alternative, the department, in addition to its general allegation that it is entitled to a new trial for the same reasons that it believed it was entitled to a judgment n.o.v., has raised numerous assignments of error which shall be addressed seriatim in the following paragraphs.

At the outset, we note that as a general rule, a new trial may be granted only where the verdict was so contrary to the evidence as to shock one's sense of justice. *Seewagen v. Vanderkluet,* 338 Pa. Super. 534, 488 A.2d 21 (1985); *Baldino v. Castagna,* 308 Pa. Super. 506, 454 A.2d 1012 (1982), rev'd on other grounds, 505 Pa. 239, 478 A.2d 807 (1984). The law is clear that the grant or refusal of a new trial is within the sound discretion of the trial court, although that discretion is not absolute. *Gonzalez v. United States Steel Corp.,* 248 Pa. Super. 95, 374 A.2d 1334 (1977), aff'd at 484 Pa. 277, 398 A.2d 1378 (1977). In resolving this issue, the court does

not consider the evidence in the light most favorable to the verdict winner but must consider the entire record to determine whether the verdict was arbitrary or capricious or whether it was against the weight of the evidence or whether there was clearly an error of law or a palpable abuse of discretion in its rulings. *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985); *Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970); *Gonzalez v. United States Steel Corporation, supra; Seewagen v. Vanderkluet, supra.*

Having carefully reviewed the entire record in this case, we first find that the evidence presented was sufficient to warrant the jury's findings against the commonwealth defendant and we therefore decline to grant PennDOT a new trial on that basis.

The department next argues that this court committed reversible error in permitting the plaintiff to review a 3R Accident Review study and in allowing plaintiff to call one Randall Wanger, a PennDOT employee, to testify.[1] PennDOT further complains that the testimony allegedly concerning the contents of the 3R Accident Review and regarding certain sign orders was improperly admitted. Again, we disagree.

In support of the foregoing argument, defendant wholly relies upon 75 Pa.C.S. §3754, which states:

"§3754. Accident prevention investigations —

"(a) *General Rule* — The department, in association with the Pennsylvania State Police, may conduct in-depth accident investigations and safety

---

1. We note that these same issues were the grounds for two separate commonwealth motions for a protective order in April and October 1987. On both of those occasions, we denied the motions on the ground that the Accident Review was not then and there before us for evaluation with leave to the Department of Transportation to again raise the issue at trial.

studies of the human, vehicle and environmental aspects of traffic accidents for the purpose of determining the causes of traffic accidents and the improvements which may help prevent similar types of accidents or increase the overall safety of roadways and bridges.

"(b) *Confidentiality of reports* — In-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be discoverable nor admissible as evidence in any legal action or other proceeding, nor shall officers or employees or [sic] the agencies charged with the development, procurement or custody of in-depth accident investigations and safety study records and reports be required to give depositions or evidence pertaining to anything contained in such in-depth accident investigations or safety study records or reports in any legal action or other proceedings."

Prior to amendment in 1986, discovery of in-depth accident investigations and safety studies was repeatedly held permissible, although neither these documents nor the information contained therein could be admitted into evidence in legal proceedings. See generally, *Gable v. Remington Arms Co. Inc.*, 97 Pa. Commw. 180, 510 A.2d 153 (1986); *Shoyer v. City of Philadelphia,* 96 Pa. Commw. 75, 506 A.2d 522 (1986); appeal dismissed as improvidently granted, 534 A.2d 758 (1987); *Smith v. Pa. Department of Transportation,* 29 D.&C. 3d 129 (1983); *Simon v. Allegheny County,* 23 D.&C. 3d 360 (1982); *Lindsey v. PennDOT,* 23 D.&C. 3d 202 (1982); Pa.R.C.P. 4003.1. With the 1986 amendment, however, the language "shall not be discoverable" was added to subsection (b). Although there has not been any subsequent case law construing this amendment, the law in this area now appears to be that

such accident reviews and safety studies may no longer be *either* discovered or admitted into evidence.

Accordingly, we perceived the threshold issue presented in this case as being whether or not the 3R Accident Review fell within the description of an accident prevention investigation set forth in section 3754. After carefully reviewing the subject document in this light, we determined that it did fall within that definition and, contrary to PennDOT's assertions, the admission and discovery of the review was therefore *not* permitted by the court. We note, however, that plaintiff's counsel did obtain copies of certain sign orders which were later incorporated into the 3R Accident Review. Insofar as these documents were provided to plaintiffs by counsel for PennDOT, PennDOT cannot be heard to now complain about their use at trial. For these reasons, PennDOT's motion for a new trial on this issue is denied.

With regard to the department's argument concerning the testimony of Mr. Wanger, this court specifically held, after reviewing a pretrial deposition taken of the witness, that while section 3754 did not preclude him from testifying altogether, his testimony was to be limited to matters which would not fall within the confines of section 3754. In order to determine what testimony was permissible, the court thereafter directed the witness to point out where in the 3R report his testimony on a point in controversy would be originating and the court would then determine whether the proposed testimony was prohibitive under section 3754. In carefully reviewing the record, we find that this procedure was followed throughout the course of Mr. Wanger's examination and that there was no testimony on anything which was contained in the 3R

Accident Review. Consequently, we can discern no reversible error on this point either and the commonwealth's motion is therefore denied.

The department also contends that the court erroneously permitted Raleigh Mapes to be cross-examined on what consideration he had given the 3R study in redesigning Route 896 and in allowing plaintiffs' attorney to review the study itself prior to cross-examining this witness. In effect, however, counsel for PennDOT herself "opened the door" to these questions and to discovery by making the following inquiry:

Q: Now, in doing the design for this roadway, what, if any, guidelines did you see?

A: We used, basically — at that present time, we had a 3R guideline for that type of road.

Q: And were these guidelines based — whose guidelines were these?

A: Our design manual, Part II, had a guideline specifically prepared for 3R usage.

Q: So those were the commonwealth's guidelines?

A: Yes.

Insofar as it was defendant PennDOT which first asked the witness the extent to which the 3R guidelines had been utilized in the redesign of Route 896, it was clearly a proper subject for plaintiffs' cross-examination. It was for this reason that we allowed the 3R Accident Study to be examined and we see no reason to reverse this holding now.

PennDOT next avers that the trial court erred in permitting plaintiffs to call employees Mapes and Wanger to testify as if on cross during their case-in-chief. Once again, we stand by our earlier ruling.

42 Pa.C.S. §5935 permits a party to call an opposing party or a witness with an adverse interest

and question him as if under cross-examination by virtue of the following language:

"In any civil action or proceeding, whether or not it is brought or defended by a person representing the interests of a deceased or lunatic assignor or any thing or contract in action, a party to the record, or for whose immediate benefit such proceeding is prosecuted or defended, or any director or other officer of a person which is a party to the record, or for the immediate benefit of which such action or proceeding is prosecuted or defended, or *any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination* subject to the rules of evidence applicable to witnesses under cross-examination, and the adverse party calling such witnesses shall not be concluded by his testimony, but such person so cross-examined shall become thereby a fully competent witness for the other party as to all relevant matters whether or not these matters were touched upon in his cross-examination . . . " (emphasis supplied)

Similarly, when a witness is hostile or biased against the party calling him, examination by leading questions on direct or redirect is also permitted. R. Feldman, *Feldman's Trial Guide*, section 5.47 (1982); L. Packel & A. Poulin, *Pennsylvania Evidence*, section 611.3 (1987), citing *Commonwealth v. Settles*, 442 Pa. 159, 275 A.2d 61 (1971); *Commonwealth v. Percell*, 274 Pa. Super. 152, 418 A.2d 340 (1979), rev'd on other grounds, 499 Pa. 589, 454 A.2d 542 (1982). See also, *In re Rogan's Estate*, 404 Pa. 205, 171 A.2d 177 (1961).

It thus becomes incumbent upon the trial judge to determine whether a particular witness is sufficiently adverse, hostile or biased against a party seeking to call to allow cross-examination on direct.

While we acknowledge that employees of a party are not necessarily sufficiently adversely interested so as to entitle the other party to call them as on cross-examination, (*Commonwealth of Pennsylvania, Department of Health v. Brownsville Golden Age Nursing Home Inc.,* 103 Pa. Commw. 449, 520 A.2d 926 (1987)), we note that the decision on whether or not to allow cross-examination of a hostile witness is one which rests within the sound discretion of the trial court. *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968), cert. denied, 393 U.S. 1102 (1969); *Bell v. City of Philadelphia,* 341 Pa. Super. 534, 491 A.2d 1386 (1985); *Commonwealth v. Duffy,* 238 Pa. Super. 161, 353 A.2d 50 (1975).

In this case, both Raleigh Mapes and Randall Wanger were significantly involved in the design and reconstruction of the roadway on which Amanda Francart was killed. Specifically, Mr. Mapes was the engineer responsible for the redesign of Route 896 while Mr. Wanger was responsible for, among other things, generating the traffic sign installation orders governing the roadway at issue. By its very nature, plaintiffs' complaint against the Department of Transportation involved rather severe criticism of the professional skills and judgment of these two employees. In all likelihood, the crux of the testimony of both gentlemen would be in strenuous defense of their decisions and actions. For this reason, we determined that both Mr. Mapes and Mr. Wanger had sufficiently adverse interests as to render cross-examination of them on direct permissible.

The department next argues that this court erroneously allowed plaintiffs' expert to testify about a survey which it conducted some eight months after the accident on the grounds that it was inadmissible because it was subsequently made and that the court

had agreed to preclude such evidence when it granted PennDOT's motion in limine. We disagree.

For one, although the speed limit study was dated May 21, 1984, the conditions and data upon which it was based were the same as those in existence at the time of the accident involving plaintiff's decedent. We thus find no error in permitting some discussion concerning it. See *Topelski v. Universal South Side Autos Inc.*, 407 Pa. 339, 180 A.2d 414 (1962); *Commonwealth v. Ball*, 357 Pa. Super. 32, 515 A.2d 307 (1986), allocatur denied, 528 A.2d 601 (1987); *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 330 Pa. Super. 420, 479 A.2d 973 (1984); *Evans v. Goldfine Truck Rental Service*, 241 Pa. Super. 329, 361 A.2d 643 (1976); *Ritson v. Don Allen Chevrolet*, 233 Pa. Super. 112, 336 A.2d 359 (1975).

In addition, the motion in limine operated to only preclude admission of evidence concerning dissimilar accidents which occurred prior to September 6, 1983 and evidence regarding erection of additional traffic signs after that date. Contrary to PennDOT's assertions, the only conversation concerning accidents in the context of the speed-limit survey consisted solely of a brief inquiry of whether the speed-limit study referred to accidents along Route 896 between station numbers 53 and 77. Moreover, plaintiff's counsel discontinued this line of questioning upon the realization that only those accidents which: (1) involved a pedestrian and (2) occurred within 500 feet of the Francart accident in dry, clear daylight were admissible. There was no discussion of any details of any of these accidents whatsoever and we therefore concluded that there was no testimony or evidence to strike.

PennDOT next assigns as error the admission of a letter dated January 27, 1984 from one of its district

engineers to Michael Zinn apparently in response to earlier correspondence from Mr. Zinn. Essentially, PennDOT alleges that permitting Mr. Zinn to read a sentence from this letter constituted the admission of hearsay, irrelevant and prejudicial evidence.

As a general rule, evidence is relevant if it tends to make a fact in issue more or less probable or to show the origin and history of the transaction between the parties and explain its character. *Morris v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983); *Gregg v. Fisher,* 377 Pa. 445, 105 A.2d 105 (1954); *Maravich v. Aetna Life & Casualty Co.,* 350 Pa. Super. 392, 504 A.2d 896 (1986). It has also been said that any legally competent evidence which, when taken alone or in connection with other evidence, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical and reasonable inference with respect to the matter or principal fact in issue, is relevant. In determining admissibility then, much is left to the discretion of the trial judge. *Reichman v. Wallach,* 306 Pa. Super. 177, 452 A.2d 501 (1982); *Commonwealth v. Vukovich,* 301 Pa. Super. 111, 447 A.2d 267 (1982).

Although never formally defined by the legislature, the courts of this commonwealth usually regard hearsay as "in-court evidence of an out-of-court declaration, whether oral or written, which is offered to prove the truth of the out-of-court assertion." *Carney v. Pennsylvania Railroad Company,* 428 Pa. 489, 240 A.2d 71 (1968); *Kemp v. Qualls,* 326 Pa. Super. 319, 473 A.2d 1369 (1984). Hence, where the testimony or evidence at issue is not offered for purposes of proving the truth of the matter asserted therein, it does not constitute hear-

say and the hearsay rule does not come into play. L. Packel & A. Poulin, Pennsylvania Evidence, section 801 (1987).

In the matter at bar, in response to the question "Could you tell us whether or not in that letter there is any denial of the fact that there is no curve warning sign in front of your home?" Mr. Zinn was permitted to read the following sentence aloud to the jury:

"Within the next few weeks, the signing forces of Chester County will be instructed to install and/or replace approved warning signs indicating the curves along the horizontal alignment of the highway."

As is obvious form Mr. Gallagher's initial question, this evidence was not being offered to prove the truth of the matter asserted therein (i.e., that PennDOT's Chester County signing forces were instructed to install or replace curve warning signs), but to demonstrate that the department did not therein deny that there were no curve warning signs along the stretch of Route 896 where the accident occurred. Accordingly, we determined that its admission did not constitute a violation of the hearsay rule. Having now reviewed the entire trial record, we acknowledge that this evidence was of admittedly little relevance to the question of whether or not there were any curve warning signs present on September 6, 1983. However, the admission of irrelevant evidence is not always grounds for reversal. Rather, it becomes so only when its tendency is to draw the minds of the jury fom the issue and to confuse, prejudice or mislead them. *Reichman, supra.* To be prejudicial, evidence must have an undue tendency to suggest decision on an improper basis. *Seals v. Tioga County Grange Mutual Insurance Co.,* 359 Pa. Super. 606, 519 A.2d 951 (1986),

allocatur granted, 533 A.2d 93 (1987); *Whistler Sportswear v. Rullo,* 289 Pa. Super. 230, 243, 433 A.2d 40, 43 (1981). Thus, to justify a reversal because of a ruling on evidence, the ruling must not only have been technically erroneous, but it must also have been harmful to the party complaining. *Anderson v. Hughes,* 417 Pa. 87, 92, 208 A.2d 789, 791 (1965); *Ball v. Rolling Hill Hospital,* 359 Pa. Super. 286, 518 A.2d 1238 (1986).

In this case, we are unable to discern where or how any harm inured to PennDOT as a result of the admission of this evidence nor has the department directed our attention to any. Insofar as no fewer than six different witnesses testified, without objection, that on the day of the accident there was no sign warning southbound travelers on Route 896 of the curve in the vicinity of the Zinn residence, we find that the admission of the language contained in the January 24, 1984 letter was harmless at most. See generally, *Brennan v. St. Luke's Hospital,* 446 Pa. 339, 285 A.2d 471 (1971); *Maravich v. Aetna Life & Casualty Co.,* 350 Pa. Super. 392, 504 A.2d 896 (1986).

In further support of its post-trial motions, PennDOT next argues that the admission of a blown-up photograph of the decedent, Amanda Francart, in the liability portion of the trial was irrelevant and highly prejudicial. Again, we disagree.

It is well-settled that the admission of photographs is a matter which rests largely within the discretion of the trial judge, and an appellate court will reverse only where there has been a clear abuse of that discretion or an error of law. Generally, a photograph is admissible if it depicts a relevant object or scene in the same or similar condition to that at the time in question. *Lebanon Valley National Bank v. Henning,* 436 Pa. 446, 260 A.2d 462

(1970); *Nyce v. Muffley,* 384 Pa. 107, 119 A.2d 530 (1956); *Commonwealth v. Arizini,* 277 Pa. Super. 27, 419 A.2d 643 (1980); *Hussey v. May Department Store Inc.,* 238 Pa. Super. 431, 357 A.2d 635 (1976). Additionally, the photograph's evidentiary value must outweigh its potential for unduly prejudicing the jury. *Fahringer v. Rinehimer,* 283 Pa. Super. 93, 423 A.2d 731 (1980); *Piso v. Weirton Steel Company, Division of National Steel Corporation,* 235 Pa. Super. 517, 345 A.2d 728 (1975).

In the instant matter, the decedent's mother identified the photograph at issue as being one of her daughter, taken sometime during the latter part of the 1982 school year or some five or six months before her death and as fairly representing what Amanda looked like at the time of the accident, particularly with regard to her coloring, build and general physical features. Specifically, the photograph was offered for the limited purpose of showing Amanda's visibility on the roadway on the day of the accident. Moreover, there was nothing gruesome or particularly exciting about the photograph such as might tend to inflame or prejudice a jury. Rather, it was merely a professional still shot of the decedent, depicting her likeness from the waist up to and including her facial features. Insofar as the question of the drivers' ability to see and possibly avoid striking the decedent was, essentially, the threshold issue to be determined by the jury in the liability portion of the trial, we again conclude that the photograph was relevant and that there was nothing improper in its admission. See *Lynch v. Metropolitan Life Insurance Company,* 427 Pa. 418, 235 A.2d 406 (1967); *Hussey v. May Department Stores Inc., supra.*

The department next complaints that this court committed reversible error in overruling its objections to plaintiffs' proposed points for charge nos.

12, 14, 15, 16, 17, 18, 19, 20 and 21 and in refusing to charge the jury on nos. 9, 10, 12, 23, 25, 26, 27, 28, 29 and 30 of its own points for charge. Defendant, however, has briefed only the alleged error as to supplemental point no. 4 and we therefore now deem its allegation of error as to the other points for charge as waived. See generally, *Commonwealth v. Holtzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. Williams*, 476 Pa. 557, 570, 383 A.2d 503, 509 (1978). Accordingly, we proceed now to consider only PennDOT's argument on that one point.

As has been stated previously, where the accuracy of a jury charge is at issue, the charge must be examined in its entirety against the background of the evidence to determine whether or not error was committed and whether that error was prejudicial to the complaining party. Again, the primary duty of the trial judge in charging is to clarify the issues so that the jury may comprehend the questions that they are to decide. There is no requirement that the trial judge use the exact language of a requested point for charge, so long as the judge chooses a form of expression which adequately and clearly covers the subject. *Brandimarti v. Caterpillar Tractor Company*, 364 Pa. Super. 26, 527 A.2d 134 (1987), citing *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); *McGowan v. Devonshire Hall Apartments*, 278 Pa. Super. 229, 420 A.2d 514 (1980); *Easton National Bank & Trust Co. v. Union National Bank & Trust Co. of Souderton*, 237 Pa. Super. 316, 352 A.2d 544 (1975); *Geyer v. Steinbronn*, 351 Pa. Super. 536, 506 A.2d 901 (1986).

Similarly, it is not error for the court to refuse a requested point for charge which is improperly formulated. The court is not in any way responsible for adapting the request to make it a correct state-

ment submittable to the jury. *Parnell v. Taylor,* 266 Pa. Super. 74, 403 A.2d 100 (1979); *Soloman v. Luria,* 213 Pa. Super. 87, 246 A.2d 435 (1968).

In the matter at bar, supplemental point for charge 4 stated that:

"The failure of the commonwealth to exercise its discretion to erect traffic-control signs and devices under 75 Pa.C.S. §6122 does not constitute a negligent act which may be the proximate cause of a vehicular accident; no liability may be imposed for failure to perform a clearly discretionary act."

Section 6122, in contrast, reads in relevant part:

"(a) *General Rule* — The department on state-designated highways and local authorities on any highway within their boundaries may erect official traffic-control devices, which shall be installed and maintained in conformance with the manual and regulations published by the department upon all highways as required to carry out the provisions of this title or to regulate, restrict, direct, warn, prohibit or guide traffic."

While this court does not dispute that the decision of whether and where to post traffic-control signs is discretionary with the commonwealth, we did not believe nor could we verify from the department's citation, that supplemental point for charge number 4 was an accurate statement of the law as it applied to the commonwealth. See *Dietterle v. Harding,* 279 Pa. Super. 530, 421 A.2d 326 (1980); *Bryson v. Solomon,* 97 Pa. Commw. 530, 510 A.2d 377 (1986); *Underkoffler v. Showers,* 34 D.&C. 3d 558 (1984); *Keen v. Schlegelmild,* 14 D.&C. 3d 107 (1979). Consequently, we declined to so charge. *Parnell v. Taylor, supra* at 86, 403 A.2d at 106.

Furthermore, there was unrebutted evidence that prior to the reconstruction of Route 896 in 1982, there were traffic control and advisory signs in place

along that section of the roadway where the accident occurred. It has long been held that the commonwealth has exclusive jurisdiction over and responsibility for maintenance and repair of state highways, which responsibility clearly extends to traffic control signs and devices. *Campbell v. Commonwealth of Pennsylvania, Department of Transportation,* 105 Pa. Commw. 494, 524 A.2d 1066 (1987); *Mindala v. American Motors Corporation,* 90 Pa. Commw. 366, 495 A.2d 644 (1985); *Powell v. Wrightstown Township,* 76 Pa. Commw. 521, 464 A.2d 651 (1983); *Dickman v. Wrightstown Township,* 70 Pa. Commw. 245, 453 A.2d 366 (1982). Accordingly, the issue to be determined by the jury in this case was not whether the commonwealth was negligent in failing to erect traffic signs but whether it was negligent in failing to *maintain* those signs which had previously been in place. See also, *Farber v. Engle,* 106 Pa. Commw. 173, 525 A.2d 864 (1987). We thus determined that a jury charge on the failure to *post* was inappropriate, and we continue to stand by our earlier determination.

### *Cross-Motions For Judgment N.O.V., and/or Molding of the Damages Verdict*

The Department of Transportation next moves for post-trial relief in the form of a new trial or a molded verdict on the grounds that the trial court erred in permitting the issue of the amount of damages sustained by Mr. and Mrs. Francart for loss of consortium to go to the jury. Essentially, defendant's argument is two-fold — it avers first that Pennsylvania does not recognize a parental cause of action for loss of consortium of a child and second, that under the recently-decided *Huda v. Kirk,* 536 A.2d 513 (1988), reversed on reargument, 122 Pa. Commw. 129, 551

A.2d 637 (1988), damages for loss of consortium are not recoverable in wrongful death actions against the commonwealth. Insofar as the Commonwealth Court in *Huda* held that, with a few limited exceptions, damages normally incident to wrongful death actions are recoverable against PennDOT, the second prong of defendant's argument is no longer viable. However, for the following reasons we now grant the department the relief which it seeks on the basis of the first prong of its argument.

It is clear that under the present state of law in this jurisdiction, husbands and wives may recover loss of consortium damages arising out of death and injury actions and that children may so recover when a parent is killed. See e.g., *Spangler v. Helm's New York-Pittsburgh Motor Express,* 396 Pa. 482, 153 A.2d 490 (1959); *Steiner by Steiner v. Bell Telephone Co.,* 358 Pa. Super. 505, 517 A.2d 1348 (1986).[2] Additionally, it is well-settled that a parent can maintain a cause of action for the loss of a child's services and expected earnings during the period of his minority where injury or death occurs. *Schmidt v. Kratzer,* 402 Pa. 630, 168 A.2d 585 (1961); *Dellacasse v. Floyd,* 332 Pa. 218, 2 A.2d 860 (1938); *Olivieri v. Adams,* 280 F.Supp. 428 (E.D. Pa. 1968).

Notwithstanding the fact that our law has evolved to now allow such similar causes of action, there has apparently not been any change in either precedential or statutory authority since the state Supreme Court decided *Quinn v. Pittsburgh,* 243 Pa. 521, 90 Atl. 353 (1914). In that case, the trial judge charged the jury that it could consider the element of companionship that the injured child would have

---

2. Generally, loss of consortium is defined as the loss of companionship, society, comfort, affection and guidance. *Steiner by Steiner v. Bell Telephone Co., supra.* See also, *Gaydos v. Domabyl,* 301 Pa. 523, 152 A.2d 549 (1930).

given to her mother in arriving at an award for the loss of her services and income until age 21. In holding that this instruction was erroneous, the court definitively stated:

"The right to recover for loss of companionship is confined to cases where a husband sues for injuries to his wife. The law does not recognize loss of companionship as an element of damage in any other relation." *Quinn, supra.*

In the absence of any authority to the contrary, we find that the law of Pennsylvania continues to be that a parent may not recover damages for loss of consortium of a child and, as a result, that we should not have charged the jury on this issue. In accord: *Farmer v. Rhoads,* 43 D.&C. 3d 393 (1983); *English v. Fairfield Township,* 26 Lycoming Rep. 104 (1983); *Jacobs v. Hanover Hospital,* 90 York Leg. Rec. 77 (1976); *Ulicny v. Zapotowski,* 56 Luzerne Leg. Reg. 115 (1966).

Nevertheless, we decline to grant the department's request for a new trial. Rather, we note that the jury here separately considered and thereafter entered a clear and distinct award to the Francarts for loss of Amanda's consortium under the Wrongful Death Act.[3] Hence, in light of the manner in which this issue was presented to the jury and the alternative nature of the relief sought by PennDOT, we find that this trial error may be properly remedied by molding the jury's verdict to strike that portion thereof which awarded damages for loss of consortium. Accordingly, that part of defendant's post-trial motion which seeks a molded verdict is hereby granted.

PennDOT next avers that the court erred in permitting the issue of the Francarts' negligent

---

3. See Verdict Slip no. 2, filed November 23, 1987.

infliction of emotional distress to go to the jury. Again, the argument is two-fold in that defendant contends first, that since there was no evidence that either Mr. or Mrs. Francart actually witnessed the accident, they failed to make out a cause of action for emotional distress damages. PennDOT then secondarily alleges that, because 42 Pa.C.S. §8528 does not specifically provide for this type of damage, no recovery may be had therefor. We disagree.

It is well-settled that since our Supreme Court rendered its decision in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), the Commonwealth of Pennsylvania has steadfastedly applied what has come to be known as the foreseeability test in determining whether recovery may be had for the tort of negligent infliction of emotional distress. Under this test, the following three factors are utilized to determine whether mental or emotional injuries to a bystander plaintiff were reasonably forseeable: (1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) Whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987); *Sinn v. Burd, supra,* 486 Pa. at 170-1, 404 A.2d at 685, quoting *Dillon v. Legg,* 68 Cal.2d 728, 740-1, 69 Cal. Rptr. 72, 80, 441 P.2d 912, 920 (1961). See also, *Hackett v. United Air Lines,* 364 Pa. Super. 612, 528 A.2d 971 (1987); *Halliday v. Betz,* 356 Pa. Super. 375, 514 A.2d 906 (1986).

Applying these three factors to the matter at bar, we note that the first and third are irrefutably present in that both Mr. & Mrs. Francart were sitting inside the kitchen of their home when their daughter was struck and killed. They were close enough to actually hear the screech of tires and a sound like a watermelon exploding and to then proceed directly to the accident scene in the roadway in front of their house. Thus, we must now determine the meaning of the language "sensory and contemporaneous observation" to ascertain whether or not that element was present here.

At the outset, we observe that the rather narrow issue presented by the factual scenario of the instant case has yet to be addressed by an appellate court in this commonwealth. Accordingly, we may be guided in our analysis by decisions from sister jurisdictions, the federal judiciary, and other Pennsylvania common pleas courts. In *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1980), the Supreme Court of New Hampshire had occasion to decide a case with facts virtually identical to those now before this court.[4] In permitting recovery for the emotional injuries sustained by the parents in that case, the New Hampshire court held:

"The allegations of Mrs. Corso's complaint are that she heard a terrible noise and that when she looked out the kitchen door, she saw her child lying seriously injured on the ground. Her auditory perception

---

4. Specifically, the plaintiff mother was in her kitchen when she heard a sound described as a "terrible thud" coming from the street outside her home. Knowing that her eight-year-old daughter had been playing outside, she immediately looked out the window and saw the child lying seriously injured in the street. She immediately screamed to her husband that their child had been hit and both parents then ran to the scene to render aid.

and her immediate observance of the accident are sufficient facts to meet the test of forseeability and state a cause of action." *Corso, supra.* See also, *Champion v. Gray,* 10 Fla. 164, 478 So.2d 17 (1985).

Similarly, in *Bliss v. Allentown Public Library,* 497 F.Supp. 487 (E.D. Pa. 1980), the court permitted the plaintiff mother's complaint for negligent infliction of emotional distress to stand where she alleged that she heard a metal sculpture fall on her daughter and turned to see the child lying on the floor with the statue positioned across her arms. In so holding, the *Bliss* court reasoned:

"By pleading that the mother observed her child immediately prior to the accident and that she heard the statue fall upon her child and immediately witnessed the accident scene, the mother has identified herself sufficiently as a 'percipient witness' to state a cause of action for negligent infliction of emotional harm within the meaning of *Sinn v. Burd* . . . (citations omitted) To dismiss the mother's claim simply because her eyes focused in another direction at the exact moment of the accident would defeat the *Sinn v. Burd* policy of avoiding arbitrary results like those created by the 'zone of danger' standard, which the court jettisoned because it barred recovery 'depending upon the position of the plaintiff at the time of the event.'" *Bliss, supra.*

In *Kratzer v. Unger,* 17 D.&C. 3d 771 (1981) and *Anfuso v. Smith,* 15 D.&C. 3d 389 (1980), the common pleas courts of Berks and Northampton counties ruled that allegations by the plaintiffs in both cases that they heard their children struck and then saw the injured victims immediately thereafter, were sufficient to state a cause of action for emotional distress damages. Specifically, the *Kratzer* court stated:

"[W]e cannot believe that the [*Sinn v. Burd*] court

intended thereby to limit recovery to those situations where the shocking event might manifest itself through the eyesight of the witness, to the exclusion of other types of sensory observation. The important element is the immediate and direct awareness of what has occurred, and the appellate court's concern was to limit recovery to persons 'on the scene' when such a tragedy happens, as opposed to those who might learn of it from someone else who had been present. There is no rational reason to believe that what an eyewitness sees will be any more or less shocking than what an 'earwitness' hears." *Kratzer* at 773.

The *Anfuso* court, in turn, held:

"[W]e believe that the requirement of 'direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence' is satisfied by the pleading that the mother saw her child immediately prior to the impact, heard the squeal of tires and the impact with the child and immediately witnessed the accident scene. We reject the contention that visual perception of the impact is the only sensory observance sufficient to give rise to a cause of action. The facts as pleaded herein establish that the mother was a 'percipient witness' to the impact. See *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal. Rptr. 863, 562 P.2d 1022 (1977); *Dziokonski v. Babineau*, 380 N.E.3d 1295 (Supreme Judicial Court of Mass. 1978); *Landreth v. Reed*, 570 S.W. 2d 486 (Texas 1978). Contra, *McGovern v. Piccolo*, 33 Conn. Sup. 225, 372 A.2d 989 (1976)." *Anfuso* at 393.

In light of the factual similarities between the instant matter and the *Corso, Bliss, Anfuso* and *Kratzer* cases, all *supra,* we believe that their holdings are applicable here by analogy. In addition to

having heard the screeching tires and the sound of impact, Mrs. Francart testified that she had spoken to Amanda on the telephone only minutes before the accident and that her first thought when she heard the accident was "Oh my God, Mandy is on her way home." Mrs. Francart immediately communicated these thoughts to her husband for it was Mr. Francart's testimony that as he went toward the front door, his wife told him that "Amanda should be coming home." These facts, coupled with the contemporaneous auditory perception of the impact and the fact that Mr. Francart himself removed his daughter's body from underneath the station wagon and carried her home were, we find, sufficient to have justified submitting the negligent infliction of emotional distress issue as to both parents to the jury for resolution.

We also find no merit to the second prong of PennDOT's argument that under 42 Pa.C.S. §8528 no recovery is permitted for emotional injuries. In so arguing, the department attempts to "bootstrap" the partial statutory prohibition of wrongful death damages outlined in *Huda v. Kirk, supra,* to include proscription against recovery for emotional distress. In so doing, however, PennDOT ignores the fact that death of the victim has never been a prerequisite to recovery for negligent infliction of emotional distress. See *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1978); *Brooks v. Decker,* 512 Pa. 365, 516 A.2d 1380 (1986); *Bliss v. Allentown Public Library,* 497 F.Supp. 487 (E.D. Pa. 1980); *Kratzer v. Unger,* 17 D.&C. 3d 771 (1981). Rather, negligent infliction of emotional distress is a recognized tort in and of itself — a separate cause of action which accrues to a bystander who foreseeably suffers mental distress when a close relation is injured *or* killed. *Sinn v. Burd, supra.* Thus, while a cause of action cannot

accrue absent a showing of injury to a loved one, the tort is not ancillary to a wrongful death action. Hence, the holding of *Huda v. Kirk* has no application to this issue.

Moreover, giving the words of the statute their plain and ordinary meaning,[5] we find that such damages are, in fact provided for, under 42 Pa.C.S. §8528(c)(2) which permits damages for pain and suffering to be recovered. Accordingly, we decline to grant PennDOT the post-trial relief requested on this ground.

The department also contends that the court committed reversible error by permitting the jury to consider the issue of the decedent's pain and suffering, notwithstanding that no money damages were awarded for this element of the case. Although PennDOT fails to specify *how* "the cumulative effect of the submission of the issue to the jury in conjunction with everything else was highly prejudicial to it" as is required to preserve this issue for post-trial review,[6] it cites *Nye v. Commonwealth of Pennsylvania,* 331 Pa. Super. 209, 480 A.2d 318 (1984) as support for this allegation. Accordingly, an examination of that case as it may relate to the matter sub judice appears appropriate at this point.

In *Nye,* plaintiff's decedents were killed in a head-on motor vehicle accident which occurred when their car was forced off the road by defendant's automobile. A Dauphin County jury returned a verdict in favor of plaintiffs against the defendant

5. See 1 Pa.C.S. §§1903, 1921, 1922; *Hyser v. Allegheny County,* 61 Pa. Commw. 169, 434 A.2d 1308 (1981).

6. See discussion of waiver of alleged trial error for failure to brief or orally argue, *supra* at 604-5.

See also, *Benson v. Penn Central Transportation Co.,* 463 Pa. 37, 342 A.2d 393 (1975); *Frank v. Pekich,* 257 Pa. Super. 561, 391 A.2d 624 (1978).

driver and made a finding of no negligence on the part of the Commonwealth, Department of Transportation. Following the trial court's grant of new trial pursuant to the driver's post-trial motions, plaintiff appealed arguing that the jury could properly award damages for the pain and suffering of his deceased daughter if it believed that she was aware of her impending death as she struggled to bring her car under control. In affirming the trial court's award of a new trial, the Superior Court noted that the charge given to the *Nye* jury was actually for *post-impact* — not pre-impact — pain and suffering. Contrary to PennDOT's argument in the instant matter, the court did *not* make a definitive statement that there is no recovery for pre-impact fright. Rather, the *Nye* court held that the plaintiff is its case had failed to meet his burden of proof as to that element of damages:

"Given the facts of this case, however, we need not decide whether such a recovery is permitted in Pennsylvania. Even assuming arguendo that pre-impact fright is a recoverable element of damages in this jurisdiction, it is clear that appellant has neither pleaded nor proved a case supporting such an award. In a survival action, the estate may recover the same damages as those to which the decedent would have been entitled had he or she survived . . . (citations omitted) Thus the estate may recover damages for 'pre-impact fright' only upon proof that Karen suffered physical harm prior to the impact as a result of her fear of impending death. Appellant presented no such evidence. Thus, even assuming arguendo that Pennsylvania would permit recovery for pre-impact fright, we find that appellant failed to meet its burden of proving such damages." *Nye* at 215-6, 480 A.2d at 322.

Additionally, in contrast to the verdict in the case

at bar, the basis for the *Nye* damages verdict was unclear from its face. This factor, too, was deemed dispositive by the Superior Court:

"Instantly, it is not clear whether the jury's verdict included an award of damages for pain and suffering. *Based on the erroneous charge to the jury,* however, *we recognize that there is a great possibility that a portion of the verdict was based on an improper award for pain and suffering.* Thus, we agree with the lower court that a new trial limited to the issue of damages is unnecessary." *Nye* at 216, 480 A.2d at 322. (emphasis supplied)

Moreover, in reviewing the record on this point, we note that the charge given was in accord with *Commonwealth of Pennsylvania, Department of Transportation v. Phillips,* 87 Pa. Commw. 504, 488 A.2d 77 (1985), wherein it was held that damages for the mental and physical pain, suffering and inconvenience endured from the moment of injury to the moment of death *including* the fright and mental suffering attributed to the peril leading to the decedent's death could be recovered even where the deceased died instantly as a result of the accident. Consequently, we discern no error worthy of a new trial on this basis.

Finally, plaintiffs contend that this court erred in failing to instruct the jury that the decedent's loss of future earnings and earning capacity were not to be reduced by the costs of her personal maintenance and that they are therefore entitled to judgment n.o.v.

In support of their position, plaintiffs contend that since section 8528(c) does not specifically mention any reductions to be made in the amount of damages recoverable, the legislature intended that none were to be made. In the alternative, plaintiffs aver that the damages allowed under section 8528(c)

emanate from both the Wrongful Death Act *and* the Survival Act and thus no reductions under either act may be imposed thereunder. Plaintiffs, however, have failed to provide any precedential authority for these arguments nor has our research revealed that any such precedent exists. Thus, we look to the general rule that damages in survival actions are to be properly measured by loss of earning power less personal maintenance expenses from the time of death through the decedent's estimated working life span. *Mecca v. Lukasik,* 366 Pa. Super. 149, 530 A.2d 1334 (1987), citing *Incollingo v. Ewing,* 444 Pa. 263, 299, 282 A.2d 206, 229 (1971); *Prince v. Adams,* 229 Pa. Super. 150, 324 A.2d 358 (1974).

Personal maintenance expenses include the necessary and economical living expenses such as food, shelter and clothing that the decedent would have been required to spend in order to maintain life during this period. A deduction for personal maintenance is not limited to expenditures essential to the barest survival but rather may include deduction for such items as leisure activities, where appropriate. *McClinton v. White,* 497 Pa. 610, 444 A.2d 85 (1982); *Commonwealth of Pennsylvania, Department of Transportation v. Phillips,* 87 Pa. Commw. 504, 488 A.2d 77 (1985).

In the matter at bar, the jury received the following instructions with regard to the personal maintenance issue:

"So, turning to the question itself. State the total gross amount of future loss of earnings and earning capacity sustained by the plaintiffs under the Survival Act as a result of the accident and the death of Amanda Francart; said amount to be without regard to and without reduction by the percentage of causal negligence that you have attributed to the decedent; and also to be without regard to the

probable cost of decedent's economical and necessary living expenses required to sustain her life during the period from this day to the end of Amanda's life expectancy.

"In other words, that's referring to B. Gross amount is A. Net amount is arrived at by filling in the space for B, the amount of her cost of maintenance or the amount that you must subtract from the gross future loss of earnings to get the net future loss or earnings.

"Let's not have any misunderstanding. A is the gross. B is what you subtract in order the get the net. It is not the net itself. Obviously, the net can be arrived at by subtracting the cost of maintenance from the gross. That would give the net. B is the amount you subtract. It's not the net amount itself.

"B requires this, 'State the probable cost of decedent Amanda's necessary and economical living expenses required to sustain life during the period from this day to the end of her life expectancy; said amount to also be without regard to and without reduction by the percentage of causal negligence you have attributed to the decedent, Amanda Francart. . . . '"

Insofar as these instructions were clear, unambiguous and in conformity with existing law, we find nothing erroneous in the charge as given on this point. Accordingly, plaintiff's motion for judgment n.o.v. on this element of the damages verdict is also denied.

In light of the foregoing, we now enter the following

## ORDER

And now, June 12, 1989, following consideration of plaintiffs' and defendant PennDOT's post-trial

motions, it is hereby ordered that plaintiffs' motions be and are denied.

It is further ordered that defendant's motions are denied in all but the following respects:

(1) Defendant's motion to mold the verdict as to the first cause of action for loss of consortium under the Wrongful Death Act by striking the $100,000 awarded therefor is granted.

(2) Defendant's motion to mold the verdict by reducing plaintiffs' decedent's loss of future earnings and earning capacity by decedent's maintenance costs is granted.

(3) Defendant's motion to mold the verdict by reducing the remaining $500,000 of the jury's verdict by the 20 percent negligence attributed to plaintiffs' decedent in accordance with the Pennsylvania Comparative Negligence Act, 42 Pa.C.S. §7102 is granted, and the total verdict awarded in this case is hereby reduced to $400,000.